Mohammed A. SAIYED, Plaintiff,

v.

TRANSMEDITERRANEAN AIRWAYS, a Foreign Corporation; Northwest Orient, a Foreign Corporation; North Central Air Lines, Inc., a Foreign Corporation, Defendants.

No. G76–340 CA1.

United States District Court, W. D. Michigan, S. D.

March 17, 1981.

Robert W. Dilley, Grand Rapids, Mich., for plaintiff.

Robert Riley, Grand Rapids, Mich., for Northwest Orient.

Paul Jensen, Grand Rapids, Mich., for North Central.

John Timmer, Grand Rapids, Mich., for Transmediterranean.

OPINION

BENJAMIN F. GIBSON, District Judge.

Mohammed Saiyed brought this action to recover damages occasioned by a shipment of goods pursuant to the Warsaw Conven-

tion, 49 Stat. 3000, T.S.No. 876, *reprinted at* 49 U.S.C.A. 1502 note. In an opinion filed November 10, 1980, this Court held that Saiyed's action was precluded by his failure to give timely notice under the provisions of Article 26 of the Convention. Accordingly, summary judgment was granted to all defendants and the case was dismissed. This action is now before the Court on plaintiff's Motion for Reconsideration. A decision favorable to the plaintiff on that issue will also require this Court to deal with defendant North Central's request that summary judgment be granted on other grounds.

In 1975, Saiyed was an importer and wholesaler of household and gift items. In November of that year, he ordered a quantity of Pakistani goods through a broker in Karachi. According to Saiyed, these goods were to be resold to retailers in time for the Christmas shopping season. On December 11, 1975, the goods arrived at Kennedy International Airport via Transmediterranean Airways. They were then delivered to Northwest Orient for shipment to Detroit. It was not until December 28, 1975 that Northwest transferred the cargo to North Central for final shipment to Muskegon.

Sometime during the first week of January, 1976 plaintiff was notified that the shipment had arrived. Aside from the fact that the goods had not arrived in time for the 1975 Christmas season, some of the cargo was damaged. Although the plaintiff did not give written notice to North Central of the damage until February 20, 1976, he testified that a North Central agent took photographs and made a list of the damaged items at the time the cartons were opened. In addition, this Court recently received copies of correspondence indicating that plaintiff gave Transmediterranean notice of the delay in early January, 1976.

In its prior opinion, this Court erroneously assumed that the only notice defendants were given of Saiyed's claims was the February 20, 1976 letter to North Central. Upon reconsideration, this Court believes that its grant of summary judgment on the ground that notice was not timely was error. It appears that genuine issues of fact exist as to when Saiyed gave notice to which defendant of what type of damages he sought. Under such circumstances, a grant of summary judgment was improper. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Articles of Device ... Diapulse*, 527 F.2d 1008 (6th Cir. 1976).

In light of this decision, the Court must consider other issues bearing on North Central's right to partial summary judgment.

At the time of his deposition, Saiyed stated that his actual damage occasioned by the breakage of some of the cargo is $928.91. He also seeks damages for lost profits and injury to his credit rating allegedly due to the delay in delivery. The defendants contend that consequential damages are not recoverable. They rely on the provisions of an airline tariff approved by the Civil Aeronautics Board. In addition, North Central claims that it is entitled to partial summary judgment on the ground that it did not receive the cargo until December 28, 1975 and therefore cannot be held liable for damages occasioned by delay. For the reasons which follow, this Court is of the opinion that partial summary judgment on either ground should be denied.

Article 19 of the Warsaw Convention provides:

> The carrier shall be liable for damage occasioned by delay in transportation by air of passengers, baggage or goods.

The damages referred to in this section are subject to the limitations contained in Article 22(2) & (4) which further provide that:

> (2) In the transportation of checked baggage and of goods, the liability of the carrier shall be limited to the sum of 250 francs per kilogram, unless ....

> (4) The sums mentioned above shall be deemed to refer to the French franc consisting of 65½ milligrams of gold at the standard of fineness of nine hundred thousandths. These sums may be converted into national currency in round figures.

The third article of the Convention which has a bearing on defendants' motion for

partial summary judgment is Article 23 which states:

> Any provision tending to relieve the carrier of liability or to fix a lower limit than that which is laid down in this Convention shall be null and void. . . .

Defendants contend that Saiyed's damages must be limited to $928.91 because Rule 22(J) of C.A.B. Tariff No. 48 precludes recovery for any consequential or special damages regardless of whether the carrier had knowledge that such damage might be incurred. This Court disagrees.

The Warsaw Convention is a treaty to which the United States became a signatory in 1934. As such, it is absolutely controlling in cases involving international transportation. *Lisi v. Alitali-Linee Aeree Italiane*, 370 F.2d 508 (2nd Cir. 1955), aff'd 390 U.S. 455, 88 S.Ct. 1193, 20 L.Ed.2d 27. Prior to 1978, however, the Second Circuit (which has decided the majority of cases involving the Convention) was of the opinion that the Convention itself did not provide a cause of action. Rather, the parties were relegated to litigating their cases under some other substantive law, subject only to the rules and limitations of the Convention. Specifically, the New York Court of Appeals held that since various provisions of the Convention spoke broadly of "damages," it was necessary to look to the internal law of the parties to the Convention to determine the elements of those damages. *Rosman v. Trans World Airlines, Inc.*, 34 N.Y.2d 385, 358 N.Y.S.2d 97, 314 N.E.2d 848, 72 A.L. R.3d 1282 (1974).

More recently, the Second Circuit overruled a line of cases and followed the First Circuit in holding that the Convention itself provides a direct cause of action. *Benjamins v. British European Airways*, 472 F.2d 913, 51 A.L.R.Fed. 934 (2nd Cir. 1978); *Seth v. British Overseas Airways Corp.*, 329 F.2d 302 (1st Cir. 1964). Thus, conflicts principles are not relevant to interpreting the language of the Convention. Rather, the legal interpretation to be given to its terms must be gleaned from the four corners of the treaty, considering its legislative history and the intent of the contracting parties. *Maugnie v. Compagnie Nationale Air France*, 549 F.2d 1256 (9th Cir. 1977).

The *Maugnie* Court went on to point out that the treaty was drafted at a time when the airlines industry was in its infancy. Therefore, it was desirable to adopt uniform rules governing liability of the carriers and to impose limits on their liability in order to provide a favorable environment so as not to inhibit the industry's growth.

The common law principle of forbidding recovery of consequential damages in contract cases was first expressed in *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng.Rep. 145 (1854). The principle rested on the theory that the consideration given for the contract must take into account the risk exposure in case of breach. So too the parties to the Convention sought to set limits on liability in order that the airlines might establish reasonable rates for carriage considering potential risk exposure. Rather than limiting the type of damages recoverable, however, the parties to the Convention placed a ceiling on the amount of proven damage which could be recovered. The alternative would result in recovery of different elements of damage depending upon the country in which the action for breach was instituted and uniformity could soon be lost.

With these principles in mind, it is the opinion of this Court that Rule 22(J) of Tariff No. 48 conflicts with the provisions of Article 23 of the Convention. The rule tends to relieve the carrier of liability for damages which would otherwise be recoverable under the Convention. That portion of the tariff precluding recovery for special or consequential damages is therefore null and void. Accordingly, Saiyed will be entitled to recover provable consequential damages up to the limit allowed in the Convention unless he can show conduct by defendants which renders the limit inapplicable. (See Articles 9 and 25 of the Convention.)

The final issue left to be decided involves North Central's contention that it is entitled to partial summary judgment with respect to plaintiff's claim for delay

**1170**

damages because it did not receive the cargo from Northwest Orient until after Christmas. This Court disagrees. The provisions of Article 30(3) of the Convention are clear and unambiguous. The Article states:

> As regards baggage or goods, the passenger or consignor shall have a right of action against the first carrier, and the passenger or consignee who is entitled to delivery shall have a right of action against the last carrier, and further, each may take action against the carrier who performed the transportation during which the destruction, loss, damage or delay took place. These carriers shall be jointly and severally liable to the ... consignee.

Since Saiyed was the consignee with respect to the cargo and North Central was the last carrier, the provisions of Article 30(3) clearly give Saiyed a right of action against North Central for all damages. (See also Article 1(2) which defines international transportation as including portions of the journey which take place solely within one sovereignty.) If the proofs confirm North Central's position, it may be entitled to recover its contribution for delay damages from the other responsible defendant(s).

Accordingly, all motions for partial summary judgment are denied.

IT IS SO ORDERED.