AMERICAN SAMOA GOVERNMENT ex rel.
JERRY LANGFORD, Plaintiff

v.

HAWAIIAN AIRLINES, Inc., Defendant

High Court of American Samoa
Trial Division

CA No. 37-88

January 5, 1989

Before KRUSE, Chief Justice, and TAUANU`U, Chief Associate Judge.

Counsel: For Plaintiff, Tauivi Tuinei
For Defendant, Charles Ala`ilima

On July 27, 1987, Jerry Langford flew from Tongatapu, Tonga to Honolulu, Hawaii on Hawaiian Airlines. One piece of baggage checked with the airline never arrived in Honolulu. The lost metal box contained both some personal effects of

Langford's and television equipment which is conceded by Langford to have belonged to his employer, the American Samoa Government. The District Court found that plaintiff Langford had suffered $80 in damages for lost clothing and awarded the American Samoa Government (hereinafter referred to as "A.S.G.") $1366.00 in damages for the lost equipment. Pursuant to A.S.C.A § 3.0309, Hawaiian appealed to the Trial Division of the High Court by way of trial de novo.

The most important issues as they developed at trial were: (1) whether plaintiff Langford was entitled to recover damages consequential in nature; and (2) the measure of such damages.

Our main problem with giving relief similar to the relief decreed in the court below is that the television equipment was simply not Langford's and A.S.G. is not before the Court. The District Court characterized the A.S.G. as a "plaintiff" in its own right and awarded the A.S.G. the lion's share of the damages. Findings of Fact, Conclusions of Law, and Order, American Samoa Government ex rel. Langford v. Hawaiian Airlines, CA No. 58-87 (District Court March 2, 1988). However, the complaint in that case does not indicate that A.S.G. was a plaintiff. Moreover, the complaint sets out the basis of the suit as the right of the Director of the Bureau of Consumer Protection to bring suit on behalf of individuals. See A.S.C.A. § 27.0402. As a non-party, the A.S.G. may not be allowed to recover directly.

It was tenuously suggested that Langford ought to be able to recover the full value of the lost case. His supervisor stated something on the order of: "If we do not recover during this trial, we will be looking to someone to reimburse us for the lost equipment." We doubt that that statement alone would suffice to show that Langford will have suffered damages equal to the full value of the case. After all, no one has forced him to pay over the value of the lost equipment and it is doubtful that an independent suit by the A.S.G. could find Langford liable for the loss.

Langford, however, testified that he spent $395.00 of his own funds in Guam to replace one of the lost items, a battery pack, in order that he could do the filming which was the whole purpose of his travel to Guam. Langford now holds the battery

3

pack, although it is of no personal use to him, in the hopes of reimbursement. Hawaiian has denied liability, while his employer, A.S.G., on the other hand chose not to entertain reimbursement expecting that Hawaiian should be responsible. We feel that in these circumstances Langford has been damaged to a greater degree than the $80.00 for lost personal effects --- he is out of pocket of $395.00 because his baggage did not arrive with him in Guam.

Hawaiian defended Langford's claim on the basis that its contract had disclaimed liability for "valuable items including but not limited to . . . electronic equipment . . . [and] photographic, video and optical equipment" and that the television components here fell within this exclusion of liability. Rule 26 (B) (2), Terms of Contract of Carriage, at 49 (April 9, 1987).

Discussion

There is no real question that the Warsaw Convention[1] is applicable to this case. The Convention applies to "international transportation." Warsaw Convention, art. 1(2). Here, Langford traveled between two countries which have signed the Convention --- Tonga and the United States. Thus, whether Langford's expenditure of $395.00 is compensable depends on the construction of the Convention.

The Convention provides that "[t]he carrier shall be liable for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage." Warsaw Convention, art. 18(1).[2]

_____

[1] Multilateral Convention for the Unification of Certain Rules Relating to International Transportation by Air, opened for signature Oct. 12, 1929, adhered to by the United States June 27, 1934, 49 Stat. 3000, T.S. No. 876 (reprinted as note to 49 U.S.C.A. § 1502).

[2] The Convention allows a carrier to escape liability by demonstrating that it had taken all necessary measures to avoid damage or by showing that the passenger contributed to his damage. Warsaw Convention, arts. 20, 21. Hawaiian has not attempted to make any such showing.

Courts interpreting this provision and the analogous clause creating liability for personal injury or death have reached two different results.[3] Some courts have said that the clause does not itself <u>create</u> a cause of action. So, the definition of what is "damage" compensable under article 18 would be left up to the internal law of the court hearing the suit. <u>See, e.g.</u>, <u>Noel v. Linea Aeropostal Venezolana</u>, 247 F.2d 677 (2d Cir.), <u>cert. denied</u> 355 U.S. 907 (1957). More recently, some federal circuit courts have reversed their previous opinions and have construed the language of the clause to create a cause of action, <u>see, e.g.</u>, <u>In re Mexico City Aircrash of October 31, 1979</u>, 708 F.2d 400, 415 (9th Cir. 1983); <u>Benjamins v. British European Airways</u>, 572 F.2d 913 (2d Cir. 1978), <u>cert. denied</u> 439 U.S. 1114 (1979), and have held that the meaning of what is "damage" is controlled by construction of the Convention.

From our analysis of the cases, it is the Court's view that the interpretation provided by the latter line of authority suggests the more logical and natural result of the Convention. Among the reasons given by the more recent cases to sustain the view that the Convention establishes a cause of action, was the apparent and primary concern among the delegates to create and formulate a uniform law relating to the regulation of international air carriage. The court in <u>Benjamins</u> pointed out that making a plaintiff's rights under the Convention dependent on the prior question whether the domestic law of a signatory provided him a cause of action was inconsistent with the spirit of the Convention. The policy of uniformity can only be best effectuated by interpreting the Convention as establishing causes of action independent of local law. The cases further go on to consider in context a number of the Convention's provisions as well as conference minutes as clearly establishing the intendment of universal regulation. As a result the Ninth Circuit in <u>In re Mexico City Aircrash,</u> concluded that article 17 of

---

[3] Although the cases to be cited in this paragraph deal primarily with questions of jurisdiction and whether a plaintiff in a Warsaw Convention case needs to meet the independent jurisdictional requirements of diversity cases, the principles they discuss apply to the question discussed as well.

the Convention established a wrongful death cause of action independent of the provisions of California law. Accordingly, this Court shall be guided by the terms of the Convention in determining what damages and the amount of damages plaintiff may recover.

Under the interpretation of cases such as Benjamins, the Convention creates liability "for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage." Warsaw Convention, art. 18(1) (emphasis added). In construing this clause to determine what "damages" are recoverable, it is instructive to note that were the sentence meant to exclude "consequential" damages, it could more simply have been phrased in terms of the "value of the lost, destroyed, or damaged merchandise." At least one court has held that consequential damages are recoverable under this article. Saiyed v. Transmediterranean Airways, 509 F. Supp. 1167, 1169 (W.D. Mich. 1981). Also, the scheme of the Convention would make little sense if one were not able to recover consequential damages. Article 19 provides that airlines "shall be liable for damage occasioned by delay in the transportation by air of passengers, baggage, or goods." Warsaw Convention, art. 19. The major types of damages one might have due to delay are consequential in nature --- having to do without goods, fallen market prices, replacement in the interim, etc. It would make little sense if one could recover consequential damages for the delay of baggage but not for its destruction.

Finally, it is to be noted that the common law requirement of "foreseeability" of consequential damage under the rule of Hadley v. Baxendale, 9 Exch. 341 (1854), is not applicable under the Convention. The rule of Hadley v. Baxendale on consequential damages results in an allocation of economic risks. The common law limited the type of damages available to those foreseen by the parties when contracting. The Convention, on the other hand, while allowing recovery of consequential damages, allocates risk in a different fashion. Instead of limiting the type of damages recoverable, it imposes a ceiling on the amount of provable damages one may recover and thus seeks to secure reasonable rates of carriage within the industry given potential risk. Saiyed, 509 F. Supp. at 1169. Otherwise, "[t]he alternative would result in recovery of different elements of damage

6

depending upon the country in which the action for breach was instituted and uniformity could soon be lost." Id.

On the facts herein, Langford travelled to Guam to film and document an event, a meeting of the Pacific Post Secondary Education Council. He was not able to do so without the missing battery pack and given the exigencies of his situation he accordingly purchased with his own funds a battery pack in order to do the filming that took him all the way to Guam in the first place. In the ordinary course of things, Langford had expected his checked baggage, and hence the missing battery pack, to be available to him upon his arrival in Guam. As things turned out, he had to spend money, which he would otherwise have not, had his baggage not gone astray.

We conclude that Langford's need to acquire the battery with his own funds, constituted damage within the provisions of article 18(1) of the Convention.

We next consider the impact of Hawaiian's contractual disclaimer.

The Convention provides that "[a]ny provision tending to relieve the carrier of liability or to fix a lower limit than that which is laid down in this convention shall be null and void." Warsaw Convention, art. 23. The exclusion asserted here by Hawaiian must be viewed as one "tending to relieve the carrier of liability" since the contractual term attempts to exclude from liability such a large class of goods --- "valuable items"--- which the Convention itself never mentions as items which are excludable. Instead, the Convention speaks in the near-absolute terms we noted above --- the carrier "shall be liable for damage."

Further any terms of contract which are inconsistent with the terms of the Convention are void for of two reasons: first, the contract explicitly states that any contractual provision "which is inconsistent with any provision of the said [Warsaw] Convention shall, to that extent, but only to that extent, be inapplicable to international transportation." Rule 1(B), Terms of Contract of Carriage, at 5 (October 30, 1983). Also, the Convention is a treaty obligation of the

7

United States. It is thus the supreme law of the land, U.S. Const. art. VI, and supersedes both state laws, In re Aircrash in Bali, Indonesia on April 22, 1974, 684 F.2d 1301, 1309 (9th Cir. 1982), and private contractual terms.

In the Saiyed case, the contract of carriage had disclaimed liability for consequential damages. The plaintiff's shipment of goods was delayed and damaged when it arrived in Pakistan and the plaintiff sought damages for his lost profits and injury to his credit rating. Saiyed, supra, at 1168. The court held that the contractual provision violated article 23 because it "tends to relieve the carrier of liability for damages which would otherwise be recoverable under the Convention." Id. at 1169. Similar reasoning would invalidate the electronic equipment exclusion. More closely analogous on its facts is Schedlmayer v. Trans International Airlines. 99 Misc. 2d 478, 416 N.Y.S.2d 461 (1979). The court in Schedlmayer found unenforceable an airline tariff disclaiming responsibility for cash in passengers' baggage. The court held that to allow such a tariff to stand would be tantamount to allowing the airline to relieve itself of liability beyond the extent permitted by the Convention and thus contravene article 23. Id., 416 N.Y.S. 2d at 464.

Finally we look to the carrier's limits of liability under the Convention.

The Convention limits a plaintiff to recovering $9.07 a pound in damages for lost, delayed, or damaged baggage.[4] Neither party proved the weight of the bag. However, it would seem that the burden is on Hawaiian to demonstrate how much the bag weighed. See DeMarines v. KLM Royal Dutch Airlines, 433 F.Supp. 1047, 1061 (E.D. Pa. 1977), rev'd on other grounds 580 F.2d 1193 (3d Cir. 1978) (the airline must prove delivery of ticket to claim limitation of liability for personal injuries or

---

[4] The Convention limits liability to a certain amount of gold per kilogram. Warsaw Convention, art. 22(4). The figure of $9.07 per pound derives from the last "official" price for gold before gold prices became set on the free market. Trans World Airlines, Inc. v. Franklin Mint Corp., 466 U.S. 243 (1984).

death). Having failed to do so, it is reasonable to assume that the bag weighed up to 70 pounds--- the most weight which Hawaiian's contract purports to authorize the passenger to carry in one bag. Rule 24 (A), Terms of Contract of Carriage, at 46 (June 24, 1986). If we assume this, Langford's maximum recovery of $475.00 ($80.00 in clothing plus $395.00 for the replacement battery pack) is well below the $634.90 ceiling under the Convention.

For the foregoing reasons, plaintiff Langford shall have judgment against defendant Hawaiian Airlines for the sum of $475.00. It is also decreed that the battery pack in question held by Langford shall be delivered to, and disposed of by, defendant Hawaiian Airlines in mitigation of damages.

It is so Ordered.