41 F.3d 535
 Jayantilal LATHIGRA; Sandhya Lathigra; Lillam Jayantilal;
Reekha Nimchand; Shashi Shah, Plaintiffs-Appellants,
v.
BRITISH AIRWAYS PLC, a U.S. holding of British Airways,
P.L.C., a Michigan corporation, Defendant-Appellee.
 No. 93-35072.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 8, 1994.
Decided Dec. 1, 1994.
 
 Howard Alan Coleman, Riddell, Williams, Bullitt & Walkinshaw, Bellevue, WA, for plaintiffs-appellants.
 Diane Westwood Wilson, Condon & Forsyth, New York City, for defendant-appellee.
 Appeal from the United States District Court for the Western District of Washington.
 Before: POOLE, BRUNETTI, and KLEINFELD, Circuit Judges.
 BRUNETTI, Circuit Judge:
 
 
 1
 Appellants were British Airways passengers returning from Seattle to Madagascar, with a connecting flight on Air Mauritius from Nairobi to Antananarivo. Days before the flight in September 1989, their agent (i.e., the relative whom they had been visiting in Seattle) called British Airways ("BA") to reconfirm the booking. BA, which had itself issued the tickets, reconfirmed appellants' reservations, but neglected to inform them that the Air Mauritius flight had been discontinued.[1] Appellants were stranded in Nairobi for five days and thereby incurred various damages.
 
 
 2
 In August 1992, they brought a negligence action in Washington state court. BA removed, arguing that the case presented a federal question because the conduct at issue came within the scope of the Warsaw Convention ("the Convention"),[2] and then moved for summary judgment on the ground that the suit was time-barred. The district court granted BA's motion for summary judgment of dismissal and denied appellants' cross-motion to remand to state court. We reverse, holding that the Convention did not govern BA's conduct here.
 
 Discussion
 
 3
 We review de novo the district court's grant of summary judgment. Maffei v. Northern Ins. Co. of New York, 12 F.3d 892, 895-96 (9th Cir.1993). Removal of a case from state to federal court is an exercise of federal subject matter jurisdiction which we also review de novo. Hellon & Assoc., Inc. v. Phoenix Resort Corp., 958 F.2d 295, 297 (9th Cir.1992).
 
 
 4
 BA removed the case to the Western District of Washington on the ground that its actions fell under the Convention, a treaty to which the United States is a party. See 49 U.S.C. app. Sec. 1502. The Convention provides only a two-year statute of limitations for damages actions. Convention, art. 29(1).[3] If the Convention governs this action, federal question jurisdiction is proper but the suit is then time-barred. By contrast, Washington's statute of limitations for negligence actions is three years. Wash.Rev.Code Ann. Sec. 4.16.080(2) (West 1988). If the Convention does not govern, the suit is not time-barred, but removal was improperly granted because the case does not present a federal question.
 
 
 5
 On appeal, appellants renew their claim that the Convention does not apply to BA's conduct in this situation, while BA again contends that the Convention does apply. In the alternative, BA suggests that the Federal Aviation Act, 49 U.S.C. app. Sec. 1301 et seq. (1988), preempts any state law claims arising out of BA's provision of travel services.
 
 I. Warsaw Convention
 A.
 
 6
 The Convention generally regulates international air carrier liability. In particular, the carrier is liable for "damage occasioned by delay in the transportation by air" (art. 19) which arises in "international transportation" (art. 1(1)). 49 Stat. at 3014, 3019. Article 1(3) deems transport "performed by several successive air carriers" as "one undivided transportation, if it has been regarded by the parties as a single operation." 49 Stat. at 3015. The parties agree that they viewed appellants' return trip as a single operation. Finally, article 30(2) provides that "the passenger or his representative can take action only against the carrier who performed the transportation during which the accident or delay occurred." 49 Stat. at 3021.
 
 
 7
 Appellants do not allege that BA was negligent in issuing the Air Mauritius portion of their tickets. The common thread in this dispute is the question of whether BA's conduct in reconfirming a flight reservation is the service of an "air carrier" in the course of performing a contract for international transportation by air. See Victoria Sales Corp. v. Emery Air Freight, Inc., 917 F.2d 705, 709-10 (2d Cir.1990) (Van Graafeiland, J., concurring in part and dissenting in part). If so, the Convention governs and we must affirm. If that conduct is more properly analogized to the service of an independent ticketing agent who could be subject to a state law negligence claim, appellants can survive the limitations hurdle.
 
 B.
 
 8
 BA relies on the Second Circuit's decision in Reed v. Wiser, 555 F.2d 1079 (2d Cir.), cert. denied, 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977), and its progeny. Reed itself rejected an attempt to circumvent the Convention's liability limitations through suing airline employees rather than the carrier itself. Id. at 1092 ("[N]ot only [would] the purpose of defining the limits of the carrier's obligations be circumvented, but in the process the Convention's most fundamental objective of providing a uniform system of liability ... [would] be abandoned.").
 
 
 9
 Subsequent cases have extended Reed 's rationale to airlines' agents acting in furtherance of the contract of carriage. See, e.g., Kabbani v. International Total Servs., 805 F.Supp. 1033 (D.D.C.1992) (independent contractor's airport security services fall under the Convention); In re Air Disaster at Lockerbie, Scotland on Dec. 21, 1988, 776 F.Supp. 710 (E.D.N.Y.1991) (same). As the district court noted, a number of these cases can be read to extend the Convention's scope only to those agents performing services that the carrier would otherwise be legally required to provide. However, other cases sweep more broadly, bringing under the Convention's umbrella all services provided "in furtherance of the contract of carriage." See, e.g., Johnson v. Allied E. States Maintenance Corp., 488 A.2d 1341, 1345 (D.C.App.1985) (independent contractor's skycap services in terminal fall under Convention).
 
 
 10
 The district court rejected appellants' reliance on Kapar v. Kuwait Airways Corp., 845 F.2d 1100 (D.C.Cir.1988). Kapar held that a defendant airline, which had merely issued a ticket for a flight on another carrier, had acted as an agent only and not a "carrier," such that it was not subject to suit under the Warsaw Convention for damages sustained when the flight was hijacked. Id. at 1102-1104. Appellants attempt to turn Kapar 's liability limitation shield into a sword, arguing that the relevant transportation here was to be provided by Air Mauritius and that BA was at most its sales agent and not a "carrier" in the context of appellants' delay. This distinction is unpersuasive, however, because it implies that BA would face different liability rules for the same injurious conduct solely on the basis of whether the same "undivided transportation" involved a second airline.
 
 
 11
 Far more powerful is appellants' argument that the cases upon which BA relies generally involved acts occurring "during" carriage. See, e.g., Kabbani, supra; In re Air Disaster at Lockerbie, supra; Johnson, supra; Julius Young Jewelry Mfg. Co. v. Delta Air Lines, 67 A.D.2d 148, 414 N.Y.S.2d 528 (1979) (independent contractor's interline baggage transfer services at intermediate stop fall under Convention). Here, by contrast, the alleged negligence did not occur during performance of the contract of carriage but rather days before, when BA mistakenly reconfirmed appellants' reservations on a nonexistent flight. Appellants' suggested approach has common-sense appeal. Their damages simply did not arise from a delay in the transportation by air for purposes of Articles 19 and 30(2).[4]
 
 
 12
 BA also argues that because it often takes on the role of "air carrier," a holding that the Convention governs would best serve the treaty's goals of uniformity and certainty regarding liability arising out of international air transportation. See, e.g., Floyd, 499 U.S. at 552, 111 S.Ct. at 1502. However, exalting the corporate form in the manner BA suggests does not serve these goals; rather, airlines and independent contractors should receive the same protections for the same activities. Likewise, we will not attempt to create an artificial distinction between the services typically provided by "carriers" and those typically provided by "non-carriers," or to limit the Convention's protections to those services that airlines are required by law to perform.
 
 
 13
 We therefore hold that the Convention's statute of limitations applies only to actions for delays related to the performance of the international transportation. Cf. Wolgel v. Mexicana Airlines, 821 F.2d 442, 444-45 (7th Cir.) (Convention's limitations period did not apply to action for bumping at the airport of embarkation, when the act resulted in total nonperformance of contract of carriage rather than mere delay), cert. denied, 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987).[5] We reject an "in furtherance of the contract" test as too broad: "[T]he Convention does not apply to all claims of injuries suffered in conjunction with international air travel." Pflug v. Egyptair Corp., 961 F.2d 26, 28-29 (2d Cir.1992).
 
 
 14
 Washington state law therefore governs appellants' cause of action for BA's alleged negligence in its capacity as a ticketing agent acting before commencement of the journey. The district court erred in holding that the Convention's two-year statute of limitations applied and that appellants' action was time-barred as a result.
 
 
 15
 We emphasize that BA's liability here is based upon its negligent act of reconfirming appellants' reservations days before departure in a situation where the "carrier" no longer served the route in question. Once the passenger presents herself to the carrier or its agents as ready to begin the air journey, the Convention generally governs liability for delays in the carrier's performance, and its provisions apply until completion of disembarkation at the destination airport. We leave to future cases the determination of the Convention's scope with respect to operational actions (e.g., maintenance and repair) or decisions (e.g., changes in schedules and frequencies) necessarily occurring hours or days before departure. Cf. In re Air Crash Disaster at Gander, Nfld., 660 F.Supp. 1202, 1219-21 (W.D.Ky.1987); Lear v. New York Helicopter, 23 Av.Cas. (CCH) 17,887 (N.Y.Sup.Ct.1990).[6]
 
 II. Federal Preemption
 
 16
 BA also argues that the Federal Aviation Act ("FAA") preempts appellants' state law claim. The district court did not reach this argument. The FAA states in relevant part:
 
 
 17
 [N]o State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier....
 
 
 18
 49 U.S.C. app. Sec. 1305(a)(1). The leading case in the area is Morales v. Trans World Airlines, Inc., --- U.S. ----, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), which found that the FAA preempted the enforcement of a detailed set of airline fare advertising guidelines based on state consumer protection laws. The Court found that Sec. 1305(a)(1) manifested a "broad pre-emptive purpose," id. at ----, 112 S.Ct. at 2037, and held that the guidelines "relat[ed] to" airline rates. Id.
 
 
 19
 We hold that the FAA does not preempt appellants' state law negligence claim. In Air Transport Ass'n of Am. v. Public Util. Comm., 833 F.2d 200 (9th Cir.1987), cert. denied, 487 U.S. 1236, 108 S.Ct. 2904, 101 L.Ed.2d 936 (1988), we suggested that the FAA did not preempt a California regulation banning the airlines' common practice of secretly taping calls to their reservations agents. We determined that the regulation generally prohibiting such taping did not "relate to" airline services, id. at 207, and emphasized that telephone reservations systems were not "peculiar to airlines." Id.
 
 
 20
 Moreover, whereas Morales itself addressed a set of quasi-official guidelines addressing airline tariff advertising and Air Transport Ass'n involved a state agency's regulation, we recently interpreted Morales in a more analogous individual action in West v. Northwest Airlines, Inc., 995 F.2d 148 (9th Cir.1993) (after Supreme Court remand for reconsideration in light of Morales ), cert. denied, --- U.S. ----, 114 S.Ct. 1053, 127 L.Ed.2d 374 (1994). In West, plaintiff brought a claim for compensatory and punitive damages under state contract and tort law against defendant airline, which had bumped him from one of its flights. We held that it was unclear whether such claims fell within the FAA's "preemption reach." Id. at 151. We then looked to FAA regulations, issued well before Morales, and noted that they gave the plaintiff the option of seeking a state court compensatory remedy. We concluded that the regulation remained a permissible construction of the statute, but that it did not contemplate punitive damages. We therefore held that the FAA permitted the state law compensatory claim. Id. at 152. Since the general thrust of airline deregulation endorses competitive practices such as overbooking and Congress has effected airline deregulation through amendment of the FAA, however, we held that the FAA preempted the claim for punitive damages. Id.
 
 
 21
 Obviously, FAA regulations do not discuss remedies for negligent reconfirmations. However, appellants' case against preemption is even stronger than that in West. The conduct of which appellants complain in no way serves the goals of airline deregulation; permitting this state law cause of action to go forward has far "too tenuous, remote, or peripheral" an effect on air carrier services for the FAA to preempt it. Morales, --- U.S. at ----, 112 S.Ct. at 2040 (internal quotation and citation omitted); see West, 995 F.2d at 151.
 
 III. Attorneys' Fees
 
 22
 Appellants have requested attorney's fees under 28 U.S.C. Sec. 1447(c). However, "[a]n award of attorney's fees is inappropriate ... where the defendant's attempt to remove the action was fairly supportable and where there has been no showing of bad faith." Schmitt v. Insurance Co. of N. Am., 845 F.2d 1546, 1552 (9th Cir.1988). This case does not support such an award.
 
 
 23
 REVERSED AND REMANDED.
 
 
 
 [1]
 We present appellants' version of the facts here. Appellants assert that before they called to reconfirm, BA had received notice of this schedule change and an appropriate notice had been entered in BA's computer reservations system
 
 
 [2]
 Convention for the Unification of Certain Rules Relating to International Travel by Air, Oct. 12, 1929, 49 Stat. 3000 (1934), T.S. No. 876, 137 L.N.T.S. 11, reprinted in 49 U.S.C. app. Sec. 1502 note (1988) (as amended). We note that "[b]ecause the only authentic text of the Warsaw Convention is in French, the French text must guide our analysis." Eastern Airlines, Inc. v. Floyd, 499 U.S. 530, 535, 111 S.Ct. 1489, 1493, 113 L.Ed.2d 569 (1991). However, neither party suggests that difficulties in translation are an issue, and we discern no significant linguistic ambiguities in the relevant clauses
 
 
 [3]
 Article 29(1) reads in full translation: "The right to damages shall be extinguished if an action is not brought within 2 years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the transportation stopped." 49 Stat. at 3021
 
 
 [4]
 For this reason, we need not address the question of whether the Convention creates the exclusive right of action for delays in international transportation. Cf. Jack v. Trans World Airlines, Inc., 820 F.Supp. 1218 (N.D.Cal.1993) (after an extensive discussion of the law on this subject, holding that the cause of action for bodily injury under Convention art. 17 is exclusive and certifying this decision for interlocutory appeal to this court)
 
 
 [5]
 The cases that BA cites are in harmony with this approach. In addition to those previously cited. See, e.g., Sabena Belgian World Airlines v. United Airlines, Inc., 773 F.Supp. 1117, 1119-20 (N.D.Ill.1991) (Convention's two-year limitations period did not apply to carrier's indemnification suit against baggage handling agent, but Convention did apply to initial damages suit against carrier); Sassouni v. Olympic Airways, 769 F.Supp. 537, 538-41 (S.D.N.Y.1991) (Convention applied to action by passenger who was denied boarding after an intermediate stopover); Halmos v. Pan Am. World Airways, Inc., 727 F.Supp. 122, 123 (S.D.N.Y.1989) (Convention's limitations period applied to action against carrier for providing negligently prepared food in flight); Mitchell, Shackleton & Co. v. Air Express Int'l, Inc., 704 F.Supp. 524, 527 (S.D.N.Y.1989) (holding identical to that in Sabena ); Royal Ins. v. Amerford Air Cargo, 654 F.Supp. 679, 682-83 (S.D.N.Y.1987) (Convention's liability limitations applied when air freight forwarder regularly contracted with plaintiff to perform entire international transportation of goods and issued airway bill that along with applicable federal regulations defined the forwarder as an "indirect air carrier," and goods were lost while stored overnight in forwarder's warehouse near airport); Baker v. Lansdell Protective Agency, Inc., 590 F.Supp. 165, 167-68 (S.D.N.Y.1984) (Convention applied to action against independent contractor operating pre-boarding security checkpoint, when plaintiff alleged loss of jewelry during handbag's passage through X-ray scanner); Ricotta v. Iberia Lineas Aereas de Espana, 482 F.Supp. 497, 500 (E.D.N.Y.1979) (Convention's limitations period applied to action against carrier when injury occurred during shuttle bus trip from parked aircraft to terminal), aff'd, 633 F.2d 206 (2d Cir.1980)
 
 
 [6]
 Our holding here must be interpreted in a manner consistent with our cases discussing the Convention's reach in cases involving article 17, which addresses actions for personal injuries that occur "on board the aircraft or in the course of any of the operations of embarking or disembarking." 49 Stat. at 3018. In Maugnie v. Compagnie Nationale Air France, 549 F.2d 1256 (9th Cir.), cert. denied, 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977), and Schmidkunz v. Scandinavian Airlines System, 628 F.2d 1205 (9th Cir.1980), we declined to apply the Convention's liability limits to actions for injuries occurring inside airport terminals. Thus, these cases involve additional restrictions on the Convention's reach beyond those inherent in our approach here, requiring "an assessment of the total circumstances surrounding a passenger's injuries." Maugnie, 549 F.2d at 1262. Both Maugnie and Schmidkunz involved passengers who slipped and fell in terminal common areas while making connections between carriers at foreign airports