Ben DANIEL, et. al., Plaintiffs,

v.

**VIRGIN ATLANTIC AIRWAYS
LIMITED, Defendant.**

No. C–97–3659 WHO.

United States District Court,
N.D. California.

Feb. 23, 1998.

Berndt Ingo Brauer, San Jose, CA, Walter Jay Pakter, Steven C. Dimick, Moore & Dimick, Castro Valley, CA, for plaintiffs.

Jennifer J. Johnston, William MacCary, Condon & Forsyth, Los Angeles, CA, for defendant.

## OPINION AND ORDER

ORRICK, District Judge.

In this purported class action against defendant Virgin Atlantic Airways Limited ("Virgin") for damages caused by delay in international air travel, Virgin now moves for judgment on the pleadings or, in the alternative, to dismiss the complaint for failure to state a claim. For the reasons set forth hereinafter, the Court grants Virgin's motion in part and denies it in part.

### I.

The following statement of facts is summarized from the complaint. No class has yet been certified.

Plaintiffs Ben Daniel, Rajesh K. Gupta, and Constance O. Schmidt were economy class passengers on Virgin Flight No. 19, departing London, England on September 29, 1996 at 11:00 a.m. and scheduled to arrive the same day in San Francisco at 1:00 p.m. scheduled to arrive the same day in San Francisco at 1:00 p.m. Following an alleged mechanical failure and shortage of fuel, the flight was diverted to Vancouver, British Columbia, where Virgin held all passengers involuntarily on the tarmac for one hour and fifteen minutes. Thereafter, the passengers were held in involuntary confinement in a transit lounge for one hour and ten minutes without access to telephones.

After releasing the passengers from the lounge, Virgin furnished all Upper Class and Premium Economy Class passengers with passage on other carriers departing for San Francisco the same day. Virgin denied plaintiffs and all other economy class passengers any assistance in finding alternate flights, however, requiring them to stay overnight in Vancouver at Virgin's expense. Virgin did fly them to San Francisco the next day, and plaintiffs arrived in San Francisco at 2:00 p.m., September 30, 1996, approximately twenty-five hours after their scheduled arrival. Virgin offered plaintiffs no compensation for their delay other than out-of-pocket expenses.

Plaintiffs assert the following causes of action against Virgin:

1. Travel delay in violation of article 19 of the Convention for the Unification of Certain Rules Relating to International Transportation by Air ("Warsaw Convention" or the "Convention"), reprinted as an appendix to 49 U.S.C. § 40105;

2. Breach of contract in failing to provide plaintiffs with substitute transportation to the place of destination on the date stipulated in the contract of carriage;

3. Negligence *per se* in fueling, in violation of federal regulations governing the safe operation of aircraft;

4. Negligent operation and maintenance of equipment;

5. False imprisonment, for confining plaintiffs in Vancouver International Airport against their will without access to telephones;

6. Negligent performance of a contractual duty in failing to assist plaintiffs in arranging alternate transportation to complete their journey on September 19, 1996, although such transportation was available; and

7. Negligent failure to devise and implement an emergency plan to enable plaintiffs to complete their travel as scheduled in the event of a mechanical breakdown.

In addition to damages for delay, plaintiffs seek damages for "anxiety, exhaustion, frustration, humiliation, inconvenience, mental anguish, and physical discomfort," as well as attorneys' fees and costs. (Compl.¶¶ 22–23, 54.)

Virgin now moves for judgment on the pleadings or, alternatively, to dismiss the entire action for failure to state a claim.

## II.

Virgin's motion has two prongs: (1) all of plaintiffs' causes of action fall within the scope of the Warsaw Convention; and (2) because plaintiffs seek damages only for emotional distress, and the Warsaw Convention does not permit suits for emotional distress damages, the entire complaint must be dismissed. Plaintiffs dispute Virgin's characterization of their complaint, and Virgin's legal conclusions.

## A.

The Warsaw Convention applies to all international transportation of passengers by aircraft for hire. Warsaw Convention, Oct. 12, 1929, art. 1(1), 49 U.S.C. § 40105. "International transportation" is defined as any transportation where the place of departure and the place of destination, according to the contract made by the parties, are located within two signatory countries. *Id.* art. 1(2). Great Britain and the United States are both signatories to the Warsaw Convention.

Under the Warsaw Convention, an air carrier is liable in three situations:

1. "for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking." *Id.* art. 17;

2. "for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air." *Id.* art. 18(1); and

3. "for damage occasioned by delay in the transportation by air of passengers, baggage, or goods." *Id.* art. 19.

Of these three categories of damages, only Article 19 is at issue here. "In the cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention." *Id.* art. 24(1).

The Ninth Circuit has declined to reach the question of whether the Warsaw Convention creates the exclusive right of action for delays in international air transportation. *Lathigra v. British Airways PLC,* 41 F.3d 535, 538 n. 4 (9th Cir.1994). It has repeatedly stated in dicta, however, that state law claims are not preempted by the Convention, but merely are constrained by the limits on recovery set forth in the Convention. *See In re Aircrash in Bali, Indonesia on April 22, 1974,* 684 F.2d 1301, 1311 n. 8 (9th Cir.1982) ("the Convention has never been read to *limit* plaintiffs to a cause of action arising thereunder, but rather to limit the recovery in suits for injury"); *In re Mexico City Aircrash of October 31, 1979,* 708 F.2d 400, 414 n. 25 (9th Cir.1983) (noting that the Convention did not preclude claims based on state law, but although those claims could provide varying measures of damages or varying specifications of persons entitled to recover, they could not be used to circumvent the liability limits or limitations period of the Convention); *Johnson v. American Airlines, Inc.,* 834 F.2d 721, 723 (9th Cir.1987) ("State-law claims allowing damages for injuries to goods in international air transportation can only be maintained subject to the conditions and

limits outlined in the Warsaw Convention.").

Since then, the Supreme Court has provided some guidance as to the law that applies to claims brought under Article 17, which appears to make moot the issue of whether the Convention provides an exclusive cause of action. *See Zicherman. v. Korean Air Lines Co., Ltd.,* 516 U.S. 217, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996). Article 17 provides for liability "for damage sustained in the event of the death or wounding of a passenger." Warsaw Convention, art. 17. The Court found that the term "damage"—*dommage* in the original French text—should be interpreted as "legally cognizable harm." *Id.* at 633. The same term appears in Article 19, which provides for liability for "damage occasioned by delay." Warsaw Convention, art. 19. Thus, as Article 17 provides for liability for legally cognizable harm sustained in the event of death or wounding, Article 19 provides for liability for legally cognizable harm occasioned by delay.

In *Zicherman,* the Supreme Court found that "Article 17 leaves it to adjudicating courts to specify what harm is cognizable." *Zicherman,* 116 S.Ct. at 633. The type of harm that is cognizable is to be determined under domestic law. *Id.* at 634. In coming to this conclusion, the Court relied on Article 24, however, which sets forth different standards for claims brought under Article 17 than for claims brought under Article 19. Article 24 provides:

(1) In the cases covered by articles 18 and 19 any action for damages, however founded, may only be brought subject to the conditions and limits set out in this convention.

(2) In the cases covered by article 17 the provisions of the preceding paragraph shall also apply, without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights.

Warsaw Convention, art. 24. The Court found that in an action brought under Article 17, "the law of the Convention does not affect the substantive questions of who may bring suit and what they may be compensated for." *Zicherman,* 116 S.Ct. at 634. Thus, "Articles 17 and 24(2) provide nothing more than a pass-through, authorizing us to apply the law that would govern in the absence of the Warsaw Convention" under the forum's choice of law rules.[1] *Id.* at 636, 637. The Court rejected the proposition that a uniform federal law of damages should apply to govern Warsaw Convention cases, finding that although the drafters of the Convention intended to foster uniformity in the law of international air travel, they did not find the imposition of uniformity as to the damages available under the Convention to be feasible. *Id.* at 636. "The Convention neither adopted any uniform rule of its own nor authorized national courts to pursue uniformity in derogation of otherwise applicable law." *Id.* Because *Zicherman* involved an airplane crash on the high seas, the Court found that the Death on the High Seas Act applied to define the cognizable harm for which damages could be awarded under Article 17. *Id* at 636. The Court did not purport to decide, in *Zicherman,* whether claims could be brought under both the Convention and state law, but its holding that the definition of legally cognizable damage under the Convention requires reference to domestic law appears to render the issue effectively moot. Whether or not the Convention provides an exclusive right of action, the Court still must refer to domestic law to determine the damage that is actionable.

■ The Court sees no reason why claims covered by Article 19 do not also require reference to domestic law to determine the damage that is actionable. As noted above, both articles contain the same French word *dommage,* which was inter-

1. As neither party argues that choice of law rules mandate the application of foreign law

to this action, the Court will assume that domestic law applies.

preted in *Zicherman* to mean "legally cognizable damage." The Court does not find material the differences in the language of Article 24 with respect to claims covered by Article 17, on the one hand, and Articles 18 and 19 on the other. Article 24, upon which *Zicherman* relied heavily, does distinguish claims covered by Articles 18 and 19 from claims covered by Article 17. Claims covered by Articles 18 and 19 "however founded, can only be brought subject to the conditions and limits set out in this convention." Warsaw Convention, art. 24(1). Article 24(1) also applies to claims covered by Article 17, but "without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights." *Id.* art. 24(2). The Ninth Circuit has held that the purpose of the "without prejudice" phrase in Article 24(2) was merely to make clear that local law was to determine who may bring a survival action based on the death of a passenger injured in international air travel. *In re Mexico City Aircrash,* 708 F.2d at 414. Article 24(1), which applies to claims covered by Articles 17, 18, and 19, was not intended to create an exclusive cause of action under the Convention, but was intended to allow local causes of action to provide varying measures of damages and to specify the persons who could bring suit, without negating the specific limitations set forth in the Convention. *Id.* at 414 n. 25.

■ No opinions discussing the law applicable to claims covered by Article 19 in light of *Zicherman* have been cited to the Court, nor has the Court located any cases. *Zicherman* is not inconsistent with the Ninth Circuit's previous assertions that state law claims for injuries falling within the scope of the Warsaw Convention are not barred by, but are merely limited by, the conditions and limitations of the Convention.[2] *But see Fishman v. Del-*

ta Air Lines, Inc., 132 F.3d 138 (2d Cir. 1998) (finding that all state law claims that fall within the scope of the Convention are preempted); *Jack v. Trans World Airlines,* 820 F.Supp. 1218 (N.D.Cal.1993) (finding that the Warsaw Convention provides the exclusive basis of recovery for damages arising from delay, lost or damaged goods, personal injury, and death during international flights). To the extent any of plaintiff's claims fall outside the scope of the Warsaw Convention, liability and remedies are determined by common law or statute. *See Lathigra,* 41 F.3d at 538–39; *Tseng v. El Al Israel Airlines, Ltd.,* 122 F.3d 99, 104 (2d Cir.1997); *but see Potter v. Delta Air Lines,* 98 F.3d 881, 885 (5th Cir.1996) (finding that the Convention preempts all state regulation of international air travel, even where the Convention does not provide a remedy).

**B.**

In *Lathigra,* the Ninth Circuit found that "[o]nce the passenger presents herself to the carrier or its agents as ready to begin the air journey, the Convention generally governs liability for delays in the carrier's performance, and its provisions apply until completion of disembarkation at the destination airport." 41 F.3d at 539. The court found that the case before it did not arise under the Convention because the plaintiffs sought damages for delay caused by the airline's negligent reconfirmation, days before departure, of a reservation for a nonexistent flight. *Id.* The Court found that the Convention applied only to actions for delay related to the performance of the international transportation. *Id.* at 538. Because the plaintiffs' damages in that case occurred as a result of negligence occurring prior to the commencement of the flight, their damages did not arise from a delay in the transporta-

---

**2.** For instance, the Convention provides that a carrier is not liable if it proves that it took all necessary measures to avoid the damage or that such measures were impossible. Warsaw Convention, art. 20. The Convention also contains provisions on contributory negligence, monetary limits on liability, willful misconduct, venue, and a statute of limitations. *See id.* arts. 21, 22, 25, 28, and 29.

tion by air for purposes of Article 19. *Id.* The court expressly left open the question of "the Convention's scope with respect to operational decisions (*e.g.,* maintenance and repair) or decisions (*e.g.,* changes in schedules and frequencies) necessarily occurring hours or days before departure." *Id.* at 539 (citations omitted).

■ Following *Lathigra,* it cannot be disputed that plaintiffs' claims for breach of contract for failure to provide plaintiffs with substitute transportation, and negligent performance of a contractual duty in failing to assist plaintiffs in arranging alternate transportation, fall within the scope of Article 19. The acts complained of occurred after plaintiffs presented themselves at the gate for the flight and before disembarkation at the destination airport, and caused plaintiffs' arrival at their destination to be delayed.[3]

■ Although *Lathigra* left the question open, the Court also finds that plaintiffs' claims for negligence in fueling, negligent operation and maintenance, and negligent failure to devise an emergency plan, also fall within the scope of Article 19. Assuming that these negligent acts occurred, they occurred at some point prior to the flight. *Lathigra* is distinguishable in that the negligence in that case caused plaintiffs to arrive for a completely nonexistent flight; because the flight did not exist, the preflight negligence did not delay the flight. Here, however, the alleged negligent fueling, operation, and maintenance

of the airplane resulted in a delay of the flight's arrival at its destination. The alleged negligent failure to devise an emergency plan similarly resulted in a delay in plaintiffs' arrival at their destination, once the event occurred that required the flight to be diverted to Vancouver. No cause of action arose as a result of the alleged negligence until the flight was under way, problems occurred, and the flight's arrival was delayed. All three of these negligence claims are, in essence, claims for delayed arrival at plaintiffs' destination. Accordingly, the Court finds that these claims fall within the scope of Article 19.

■ The Court is left with plaintiffs' claim for false imprisonment. The acts alleged to constitute false imprisonment also occurred after the flight began and before plaintiffs arrived at their destination. In essence, plaintiffs contend that Virgin exacerbated the delay by detaining them on the tarmac and in a transit lounge in the Vancouver airport for a total of two hours and twenty-five minutes, without access to telephones, thus preventing plaintiffs from making other travel plans. This cause of action also arises entirely from the delay of the flight. The Court notes that unlike Article 17, which provides for liability only for *accidental* injuries to passengers, Article 19 holds the carrier liable for all damage occasioned by delay in the international air transportation of passengers, without limitation that the delay be accidental. The Court finds that plaintiffs' claim for false imprisonment falls within

---

**3.** In Virgin's supplemental briefing, it argues that plaintiffs' breach of contract claims are barred because Virgin's tariffs filed with the Civil Aeronautics Board do not guarantee arrival times. As this argument first appears in the supplemental briefing, the Court will not consider it at this time. Virgin may raise the argument in a separate motion.

The Court notes, however, that Article 20 of the Convention provides that the carrier is liable unless it has taken all necessary measures to prevent the damage, or that such measures were impossible. Article 23 of the Convention provides that "[a]ny provision tending to relieve the carrier of liability or to fix a lower limit than that which is laid down

in this convention shall be null and void[.]" Warsaw Convention, art. 23. Article 33 provides that the transportation contract may not contain terms that conflict with the Convention. Any motion raising the tariff provision as a bar to the contract action must also address the interplay between the tariff and Articles 20, 23 and 33 of the Convention. The parties must also address the extent to which Article 20 has been amended or abrogated by the Montreal Agreement of 1966 (*see* 31 Fed. Reg. 7302), and/or the 1996 agreements by the International Air Transport Association and the Air Transport Association of America relating to liability limitations of the Warsaw Convention (*see* 1996 WL 656334).

the scope of the Warsaw Convention. *Cf. Chendrimada v. Air–India,* 802 F.Supp. 1089 (S.D.N.Y.1992) (holding that claim for negligence resulting from being forced to remain on a grounded aircraft for over eleven hours was governed by the Convention).

Accordingly, the Court finds that all of plaintiffs' causes of action fall within the scope of Article 19 of the Convention. Thus, all of plaintiffs' claims are subject to the conditions and limitations set forth in the Convention. *See In re Aircrash in Bali, Indonesia,* 684 F.2d at 1311 n. 8; *In re Mexico City Aircrash,* 708 F.2d at 414 n. 25; *Johnson v. American Airlines, Inc.,* 834 F.2d at 723.

### C.

 The most difficult issue is determining what constitutes legally cognizable harm for delay under domestic law. Virgin argues that all of plaintiff's claims must be dismissed, because plaintiffs seek only damages for emotional distress, which are not available under the Warsaw Convention. Virgin relies on *Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991). In that case, the passengers sued an airline for emotional distress suffered when all three engines failed during a flight over the Atlantic Ocean and the passengers were informed that the plane would make a crash landing in the ocean. After a period of rapid descent without power, an engine was restarted and the plane ultimately landed safely in Miami. The Supreme Court held that an air carrier cannot be held liable under Article 17[4] of the Warsaw Convention for mental distress that is unaccompanied by death, physical injury, or physical manifestation of injury. *Id.* at 552, 111 S.Ct. 1489. The Court expressed no opinion as to whether passengers can recover for mental injuries that are accompanied by physical injuries. *Id.* After ex-

amining the French text of the Warsaw Convention, the negotiating history of the treaty, and the unavailability of compensation for purely psychic injuries in many common and civil law countries at the time the treaty was drafted, the Court concluded that it was unlikely that the drafters intended for the Convention to provide for damages for purely mental or psychic injuries unaccompanied by physical injury. *Id.* at 544–45, 111 S.Ct. 1489. In light of this holding by the Supreme Court, this Court cannot logically find that damages for purely emotional injuries caused by delayed arrival are available under the Convention, when damages for purely emotional injuries caused by a near-crash into the ocean are not available.

Plaintiffs allege that because their arrival in San Francisco was significantly delayed, they suffered "anxiety, exhaustion, frustration, humiliation, inconvenience, mental anguish and physical discomfort." (Compl.¶ 23.) Of these, "inconvenience" could conceivably encompass economic damages, and "exhaustion" and "physical discomfort" might encompass bodily injury. The remainder clearly are forms of emotional distress. The Supreme Court has expressed "no view as to whether passengers can recover for mental injuries that are accompanied by physical injuries." *Floyd,* 499 U.S. at 552, 111 S.Ct. 1489. None of the named plaintiffs, however, has alleged economic or physical injuries in the complaint. If none of the named plaintiffs has suffered economic loss or physical injury, they do not have standing to seek such relief on behalf of the purported class. *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 2183, 135 L.Ed.2d 606 (1996) (quoting *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 40 n. 20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). The Court grants plaintiffs leave to amend the complaint to allege such damages if they can. As plaintiffs have not alleged economic loss

---

**4.** Article 17 provides for liability for the death, wounding or other bodily injury of a passenger, caused by an accident on board

the aircraft or in course of embarking or disembarking.

or physical injury, the Court takes no position at this time as to whether emotional distress damages can be recovered if accompanied by economic or physical injury.

Plaintiffs argue that even without proof of economic loss or physical injury, "mere delay" constitutes legally cognizable harm. ■ Federal regulations provide for compensation for air passengers who are involuntarily prevented from boarding a flight due to overbooking, without a requirement that the passenger prove economic damages or physical injury. 14 C.F.R. §§ 250.4, 250.5, 250.6 (1998). In colloquial terms, this is frequently referred to as "bumping." The regulations provide for a maximum compensation of $400, which is halved if the carrier provides alternate transportation that is planned to arrive at the passenger's next destination within four hours (in the case of foreign flights) of the arrival time of the original flight from which the passenger was bumped. § 250.5(a). The "bumped" passenger has the right to decline the compensation provided for in the regulation and seek to recover damages in a court of law. § 250.9(b); see West v. Northwest Airlines. Inc., 995 F.2d 148, 151–52 (9th Cir.1993) (interpreting 14 § 250.9(b) to permit suits for compensatory damages, but not punitive damages). There is nothing in these regulations that suggests that similar compensation is required, however, when a passenger is permitted to board a flight, but the flight arrives late at its destination. Nonetheless, as plaintiff argues, it appears inequitable that damages are available only when the passenger is delayed by being denied boarding, but not when the passenger boards the flight and her arrival is delayed due to problems occurring during the flight. In either case, the passenger is delayed. Accordingly, the Court adopts these federal regulations by analogy as setting forth inconvenience itself as a legally cognizable harm for delay in international air travel.

The Court is still left with the problem of precisely what sort of damages are available in a suit for delay in international air travel. There are only a handful cases discussing the damages available for cases covered by Article 19. In *Harpalani v. Air India, Inc.*, 622 F.Supp. 69, 72–73 (N.D.Ill.1985), the plaintiffs were delayed six days in India when they were repeatedly bumped from their flight from Bombay to New York, and filed suit against the airline seeking damages for the delay, including inconvenience, costs of meals and lodging, telephone expenses, and lost wages. *Id.* at 71. In a later opinion in the same case, the court concluded that Article 19 "appears to permit only compensatory damages" and granted defendants' motion to strike plaintiff's claim for punitive damages. *Harpalani v. Air–India, Inc.*, 634 F.Supp. 797, 798–99 (N.D.Ill. 1986). In *Pakistan Arts & Entertainment Corp. v. Pakistan International Airlines Corp.*, 232 A.D.2d 29, 660 N.Y.S.2d 741 (N.Y.App.Div.1997), the court looked to New York law to determine the legally cognizable damages for delay under Article 19, and cited general contract cases for the proposition that a delayed passenger can sue for all contemplated and foreseeable damages for the failure to timely transport the passenger. *Id.* at 32, 660 N.Y.S.2d 741 at 744. In *Saiyed v. Transmediterranean Airways*, 509 F.Supp. 1167 (W.D.Mich.1981), plaintiff sued under Article 19 for damages for delayed shipment of goods that arrived too late to be sold during the Christmas shopping season. The court found that the Convention trumped any limitations on liability contained in the airline's tariff, and found that the plaintiff could recover all consequential damages up to the limits provided in the Convention. *Id.* at 1169. In *Kupferman v. Pakistan International Airlines*, 108 Misc.2d 485, 438 N.Y.S.2d 189 (Civ.Ct. 1981), plaintiffs sued under state law when an airline lost plaintiffs' luggage for fifteen days during a trip to China. The court found that Article 19 applied, and held that plaintiffs were entitled to "fair and just compensation for physical discomfort, in-

convenience, humiliation, embarrassment and loss of a refreshing memorable vacation due to the total absence of their luggage including a movie camera for the duration of the China Tour, despite the fact that subject luggage was returned intact, 15–16 days later, just before their return flight." *Id.* at 489, 438 N.Y.S.2d at 192.

In addition, the Court has located a case involving a domestic flight not covered by the Warsaw Convention, where a district court found that a plaintiff who was bumped from a domestic flight was entitled to sue for compensatory damages under 14 C.F.R. § 250.9, including damages for inconvenience, loss of time, anxiety and frustration, noting that "inconvenience, delay and uncertainty are worth something even in the absence of out-of-pocket costs." *Lopez v. Eastern Airlines, Inc.,* 677 F.Supp. 181, 183 (S.D.N.Y.1988) (citations omitted).[5] Of course, after the Supreme Court's decision in *Floyd,* damages for anxiety and frustration are not compensable in Warsaw Convention cases. *Floyd,* 499 U.S. at 544–45, 111 S.Ct. 1489.

The Court finds, however, that damages for inconvenience do not fall within the rubric of "emotional distress." Time is money, after all, and the Court finds that the inconvenience of being trapped for hours in an unfamiliar airport is a compensable element of damages for delay in air travel under the Warsaw Convention and domestic law, even in the absence of economic loss or physical injury.[6] Because plaintiffs have alleged that they suffered inconvenience as a result of the delay of their international flight, and not just emotional distress, the Court denies Virgin's motion to dismiss the complaint.

## III.

Accordingly,

IT IS HEREBY ORDERED that:

1. Virgin's motion to dismiss plaintiffs' state law claims on the ground that the Warsaw Convention provides the exclusive cause of action for claims falling within the scope of the Convention is DENIED.

2. Virgin's motion to dismiss the complaint to the extent that plaintiffs seek damages for emotional distress is GRANTED.

3. Virgin's motion to dismiss the entire complaint on the ground that plaintiffs seek damages only for emotional distress is DENIED.

4. Plaintiffs shall file an amended complaint by March 4, 1998. Plaintiffs will clarify whether they are only seeking damages for mere delay, or whether any of the named plaintiffs have suffered economic loss or physical injury as a result of their delayed arrival in San Francisco.

---

**5.** *See also Smith v. Piedmont Aviation, Inc.,* 567 F.2d 290 (5th Cir.1978) (affirming an award of damages for inconvenience to a passenger who was bumped from a domestic flight and missed a wedding rehearsal and part of the rehearsal dinner).

**6.** The amount of compensation could vary dramatically depending on what the passenger was prevented from doing as a result of the flight delay.