Glenda M. HORNSBY, Plaintiff,

v.

LUFTHANSA GERMAN AIRLINES,
Defendant.

No. CV 07–7594 ABC (Ex).

United States District Court,
C.D. California.

Jan. 6, 2009.

Charles M. Finkel, Magana Cathcart &
McCarthy, Los Angeles, CA, for Plaintiff.

Rod D. Margo, Scott D. Cunningham,
Condon and Forsyth LLP, Los Angeles,
CA, for Defendant.

ORDER RE: DEFENDANT'S MOTION
TO DISMISS FOR LACK OF SUB-
JECT MATTER JURISDICTION

AUDREY B. COLLINS, Chief Judge.

Pending before the Court is a Motion to
Dismiss Plaintiff's Complaint for Lack of

Subject Matter Jurisdiction ("Motion"), filed on October 10, 2008, by Defendant Lufthansa German Airlines ("Lufthansa" or "Defendant"). Plaintiff Glenda M. Hornsby ("Hornsby" or "Plaintiff") filed an Opposition on October 16, 2008, and Defendant filed a Reply on November 10, 2008. On November 14, 2008, the Court determined that the matter was appropriate for submission without oral argument, and took the matter under submission. Having considered the materials submitted by the parties and the case file, the Court hereby DENIES Defendant's motion, as set forth below.

## FACTUAL AND PROCEDURAL BACKGROUND

For purposes of this motion, the parties appear to agree on the relevant facts, and the governing law. The only open question now is the proper interpretation of four words found in Article 33(2) of the Montreal Convention, an international treaty formally known as the "Convention for the Unification of Certain Rules for International Carriage by Air Done at Montreal on 28 May 1999." If these four words, "principal and permanent residence," are interpreted as Defendant argues they should be, then this Court does not have subject matter jurisdiction over Plaintiff's claims, and the case must be dismissed. If, on the other hand, Plaintiff's suggested interpretation of these words is correct, then the Court does have jurisdiction over the case.

The dispute arises because Plaintiff, a United States citizen who has lived in California for much of her life, was living in Germany at the time of the incident at issue here. This incident allegedly occurred on February 8, 2007, on board a Lufthansa aircraft, during an international flight from Frankfurt, Germany to Los Angeles, California. (Compl.¶¶ 5–6.)

Plaintiff claims to have been injured in turbulence experienced during the flight. (Compl. ¶ 6; see Declaration of Scott D. Cunningham ("Cunningham Decl."), Ex. A, at 25 (Pl.'s Responses to Def.'s First Set of Interrogs., No. 5).) She has admitted that at the time, she was living and working in Germany. (Cunningham Decl., Ex. C, at 42 (Pl.'s Responses to Def.'s First Set of Requests for Admission, Nos. 11–12).) While flying to Los Angeles, she was traveling on a round-trip ticket, with a return flight scheduled back to Frankfurt a few days later. (Cunningham Decl., Ex. C, at 43 (Pl.'s Responses to Def.'s First Set of Requests for Admission, No. 16).) Defendant points out, and Plaintiff does not dispute, that she had sold her house in California more than two years before the incident, and was living in an apartment in Kaiserslautern, Germany. (Cunningham Decl., Ex. E, at 70–71 (Hornsby Dep. 17:14–18:8, Sept. 9, 2008).) She had a bank account and doctors in Germany, and had brought her cats and dog to live with her there. (Id. at 78–79 (Hornsby Dep. 115:19–116:20); id. at 85 (Hornsby Dep. 231:16–20); id. at 81, 82, 86 (Hornsby Dep. 158:11–18, 160:2–4, 260:8–20).) She received mail at her Kaiserslautern address, and maintained German telephone numbers. (Id. at 83–849 (Hornsby Dep. 181:20–182:1); see, e.g., Cunningham Decl., Ex. F.) During 2007, the year in which the incident occurred, Plaintiff spent more time in Germany than in the United States. (Cunningham Decl., Ex. C, at 42 (Pl.'s Responses to Def.'s First Set of Requests for Admission, No. 13).)

Plaintiff adds, however, that while she was in Europe, she maintained her California Driver's License, maintained accounts at two banks in California and one in Texas, maintained a storage facility in California for her furniture, maintained a post office box in California, was obligated to file U.S. tax returns, and voted absentee in

U.S. elections. (Decl. of Glenda M. Hornsby (Oct. 16, 2008) ("Hornsby Decl."), at 1; Cunningham Decl., Ex. C, at 24 (Pl.'s Responses to Def.'s First Set of Requests for Admission, No. 1).) She contends that she had only a temporary residency permit in Germany, which had to be renewed regularly. (*See* Pl.'s Opp'n to Mot. to Dismiss, at 7; Declaration of Charles M. Finkel ( )ct. 16, 2008) ("Finkel Decl."), Ex. 2, at 16–17 (Hornsby Dep. 20–21). She contends that German health insurance is required for all aliens who stay in Germany for more than 90 days, and that residency permits are required for aliens intending to stay in Germany for more than three months.[1] (Hornsby Decl., at 2.) Most importantly, she has declared that it "was never [her] intention to become or be a permanent resident of Germany, or any other country outside the United States of America." (Declaration of Glenda M. Hornsby ("Hornsby Decl."), ¶ 2.) At all times, she intended to return to the United States. (Finkel Decl., Ex. 2, at 18 (Hornsby Dep. 283:19–21); Cunningham Decl., Ex. C, at 24 (Pl.'s Responses to Def.'s First Set of Requests for Admission, No.

1).) Further, while she did return to Germany for some time after the incident, she has since moved back to the United States, and is now, once again, living in California. (Finkel Decl. ¶ 1.)

Nonetheless, on October 10, 2008, after significant discovery, Defendant filed a motion to dismiss this case for lack of subject matter jurisdiction. Defendant contends that both Plaintiff's contemporary intent to return to the United States and her subsequent return in fact are absolutely irrelevant to the question of where Plaintiff's principal and permanent residence was located at the time of the incident.[2]

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(1)

█ Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Owen Equip. & Erection Co. v. Kroger,*

---

1. Defendant objects to Plaintiff's statement that she maintained German health insurance because it was required by German law, on the ground that this is improper opinion testimony by a lay witness. (*See* Objs. to Pl.'s Evid. in Supp. or Her Opp'n to Mot. to Dismiss Pl.'s Compl. for Lack of Subject Matter Jurisdiction, at 3.) To the extent that Plaintiff acted because of her belief in the requirements of German law, however, the actual requirements of German law do not need to be proven here. In any event, Plaintiff could have chosen to obtain German health insurance on an entirely voluntary basis, and that would not change the Court's ultimate conclusion here.

2. In its moving papers, Defendant did not challenge the truth of Plaintiff's assertion that she had always intended to return to the United States. It simply argued that Plaintiff's intent was "irrelevant." (Mot. at 12.) In its reply, however, Defendant suggests that,

after returning to the United States, Plaintiff may have expressed the intention of returning to Germany. (*See* Reply at 14–15.) As evidence of whether Plaintiff may currently intend to move back to Germany for good, the deposition testimony to which Defendant points is extremely weak. (If expressing frustration with the traffic on Los Angeles freeways were all it took to be considered a German resident, then, to repeat a phrase, "ich bin ein Berliner.") In any event, Plaintiff's current intent is irrelevant. What matters is Plaintiff's intent at the time she was living in Germany—that is, whether she then intended to stay in Germany or to return to the United States—and the only direct evidence presented on this score is Plaintiff's declaration. (Hornsby Decl. ¶¶ 2–3.) Of course, her current testimony about what she intended several years ago is not dispositive, but it is not outweighed here by any evidence, direct or circumstantial, to the contrary.

437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). As such, federal courts are presumed to lack jurisdiction in a particular case "unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir.1989). A party can raise the question of the court's jurisdiction by motion. Fed. R.Civ.P. 12(b)(1). In deciding a 12(b)(1) motion, a court is not limited to the allegations in the complaint but may also consider extrinsic evidence. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987). Although lack of subject matter jurisdiction is an affirmative defense, the burden of proof in a 12(b)(1) motion is on the party asserting jurisdiction, and the court will presume a lack of jurisdiction until the pleader proves otherwise. *Kokkonen*, 511 U.S. at 377, 114 S.Ct. 1673; *Stock West*, 873 F.2d at 1225.

## II. The Montreal Convention

The Montreal Convention entered into force on November 4, 2003, 60 days after the thirtieth State Party to the Convention, which in this instance happened to be the United States, deposited its instrument of ratification according to the terms of the treaty. Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 ("Montreal Convention"), Art. 53(6), *reprinted in* S. Treaty Doc. No. 106–45, 1999 WL 33292734; Press Release, U.S. Dept. of State, "Entry Into Force of the 1999 Montreal Convention" (Nov. 4, 2003), *available at* www.state.gov/r/pa/prs/ps/2003/25920.htm (last visited January 5, 2009); *Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 371 (2d Cir.2004); *Baah v. Virgin Atl. Airways Ltd.*, 473 F.Supp.2d 591, 592–93 (S.D.N.Y. 2007); Devendra Pradham, Article, *The Fifth Jurisdiction Under the Montreal Liability Convention: Wandering American or Wandering Everybody?*, 68 J. Air L. & Com. 717, 719 (2003). The Montreal Convention governs "all international carriage of persons, baggage or cargo performed by aircraft for reward." Montreal Convention, Art. 1(1). "International carriage" includes that "in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transhipment, are situated either within the territories of two States Parties, or within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party. Carriage between two points within the territory of a single State Party without an agreed stopping place within the territory of another State is not international carriage for the purposes of this Convention." *Id.* at Art. 1(2). Both the United States and Germany are State Parties to the Convention. U.S. Dept. of State, "Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force on January 1, 2007," Section 2: Multilateral Agreements, at 29, *available at* www.state.gov/s/l/treaty/treaties/2007/index.htm (last visited January 5, 2009).

■ The Montreal Convention is a "self-executing" treaty, which "creates a private right of action in U.S. courts." *Baah*, 473 F.Supp.2d at 593. The Convention provides the exclusive remedy for injuries or damage to individuals incurred on board international flights. Montreal Convention Art. 29; *Aikpitanhi v. Iberia Airlines of Spain*, 553 F.Supp.2d 872, 878–79 (E.D.Mich.2008); *see El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 160–61, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999). Under the terms of the Convention, this remedy can be pursued only in certain jurisdictions; if the United States is not one of these jurisdictions under the particular facts of this case, than this

Court does not have treaty jurisdiction, and must dismiss the matter for lack of subject matter jurisdiction. *Aikpitanhi*, 553 F.Supp.2d at 879; *see Hosaka v. United Airlines, Inc.*, 305 F.3d 989, 1004 (9th Cir.2002); *Sopcak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 818–19 (9th Cir.1995).

The question, therefore, is whether the United States should be considered an appropriate jurisdiction in this case. The Montreal Convention provides four locations where any actions for injury or damage may be brought, plus one additional choice available only in personal injury cases. Montreal Convention, Art. 33. Thus,

> [a]n action for damages must be brought, at the option of the plaintiff, in the territory of one of the States Parties, either before the court of the domicile of the carrier or of its principal place of business, or where it has a place of business through which the contract has been made or before the court at the place of destination.

Montreal Convention, Art. 33(1). In an action for the injury or death of a passenger, however,

> an action may be brought before one of the courts mentioned in paragraph 1 of this Article, or in the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence and to or from which the carrier operates services for the carriage of passengers by air, either on its own aircraft, or on another carrier's aircraft pursuant to a commercial agreement, and in which that carrier conducts its business of carriage of passengers by air from premises leased or

owned by the carrier itself or by another carrier with which it has a commercial agreement.

Montreal Convention, Art. 33(2). The Article goes on to define "principal and permanent residence" as "the one fixed and permanent abode of the passenger at the time of the accident. The nationality of the passenger shall not be the determining factor in this regard." Montreal Convention, Art. 33(3)(b).

The parties agree, correctly, that the Montreal Convention provides the exclusive remedy for the injuries Plaintiff claims to have suffered on board Defendant's international flight from Germany to the United States. They further agree that the only one of the five possible forums at issue here is the so-called "fifth jurisdiction," based on Plaintiff's "principal and permanent residence." [3] Defendant contends that the instant plaintiff's "principal and permanent residence" at the relevant time was Germany; Plaintiff argues that, while her *residence* at the time may have been Germany, her *principal and permanent* residence at the time was still the United States.

## ANALYSIS

Defendant's primary argument is that "the concepts of domicile and residence are distinct." (Mot. at 12.) Defendant devotes a substantial portion of its papers to this argument, including a page-and-a-half-long block quote from a fifty-year-old Ninth Circuit case (*see* Mot. at 14–15), but there was really no need to spend much time addressing this issue. Plaintiff does not dispute, and the case law is abundantly clear, that the word "residence," standing

---

3. Plaintiff's "place of destination" was not Los Angeles, but Frankfurt, as she was traveling on a round-trip ticket. *Baah*, 473 F.Supp.2d at 595–97. Thus, Plaintiff has not attempted to argue that this Court should be considered "the court at the place of destination" under Article 33(1) of the Convention.

alone, and the word "domicile," standing alone, are indeed generally considered two distinct concepts under federal common law. However, the word "residence" is not used in Article 33 of the Montreal Convention in its singular, unmodified sense. Rather, the question is what the *phrase* "principal and permanent residence" means, not simply the word "residence." Defendant's position is contingent on the implicit argument that no phrase containing the word "residence" could ever mean anything other than the word "residence" itself. This argument is not convincing. It seems highly unlikely that the words "principal and permanent" are pure surplusage, added by the drafters of the Montreal Convention simply for decorative purposes. Thus, whatever "residence" on its own may mean, while a relevant starting point, is not necessarily the same as what "principal and permanent residence" means. Defendant itself points out that under the Montreal Convention, it is not possible to have several "principal and permanent residences" at a time. (Mot. at 16.) Under the common understanding of the word "residence," however, it is quite possible to have more than one at a time. *See Black's Law Dictionary* 1335 (8th ed. 2004) ("A person thus may have more than one residence at a time but only one domicile.").

In any event, though, it is not for this Court to define "principal and permanent residence"—the Convention itself defines "principal and permanent residence" as "fixed and permanent abode," as both parties acknowledge. Montreal Convention, Art. 33(3)(b). Thus the question on which the Court must focus is what "fixed and permanent abode" means. The only source offered by either party to help interpret this phrase is Black's Law Dictionary. (*See* Mot. at 13; Opp. at 3–4; Reply at 4.) While there is no listing for "fixed and permanent abode," the two most recent editions of Black's list "permanent abode" with simply the reference "see Domicile(1)" as the entry.[4] *Black's Law Dictionary* 1176 (8th ed. 2004); *Black's Law Dictionary* 1160 (7th ed. 1999). The 6th edition of Black's, which may have been the most up-to-date version available when the final version of the Montreal Convention was negotiated, defined "permanent abode" as a "domicile or fixed home, which the party may leave as his interest or whim may dictate, but which he has no present intention of abandoning. *See also* Domicile; Residence." *Black's Law Dictionary* 1139 (6th ed. 1990). Black's provides no relevant guidance regarding the word "fixed" in this context, and the parties point to none. But the Court notes that the Oxford English Dictionary includes a definition of "fixed" that is complementary, defining "fixed" in part as "[f]irmly attached or implanted; securely established; secured against alteration or dislodgement." *Oxford English Dictionary,* "fixed, ppl. a. (2)" (online ed., last visited January 5, 2009).

The only conclusion to be drawn from Black's is that the phrase "fixed and permanent abode" is closer in meaning to the word "domicile" than the word "residence," and that the intent of the party is relevant to determining his or her "fixed and permanent abode." Thus, intent must also be relevant to the phrase "principal

---

4. Black's defines "Domicile (1)" as "[t]he place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere. ● A person has a settled connection with his or her domicile for legal purposes, either because that place is home or because the law has so designated that place.—Also termed *permanent abode*." *Black's Law Dictionary* 523 (8th ed. 2004).

and permanent residence," which is defined by the Montreal Convention as "fixed and permanent abode." This is consistent with the plain meaning of the phrase "principal and permanent residence," in which the key word is "permanent." As Plaintiff concedes, without the word "permanent," Defendant's position must prevail. But the Court agrees with Plaintiff that the word "permanent" imports some notion of an "intent to remain" into the phrase, similar to that inherent in the word "domicile." As Defendant itself explains in its Motion, federal common law regarding "domicile" generally provides that one does not abandon one's domicile simply by physically leaving the place; one must move to a new location with the intent to remain there. *Gaudin v. Remis*, 379 F.3d 631, 636–37 (9th Cir.2004) ("Domicile may be changed by being physically present in the new jurisdiction with the intent to remain there."); *see* Mot. at 13–15, and authorities cited therein. Thus, the old domicile remains until a new one is established. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir.1986) ("[A] person's old domicile is not lost until a new one is acquired.").

■ Of course, Black's Law Dictionary and American common law may not be dispositive when interpreting a treaty, despite both parties' reliance on them here. If the terms of a treaty are ambiguous or unclear, courts may turn to the negotiation and drafting history of the treaty for guidance. *Tseng*, 525 U.S. at 167, 119 S.Ct. 662; *Baah*, 473 F.Supp.2d at 595–96. To that end, Defendant references excerpts from the minutes of the International Civil Aviation Organization ("ICAO"), International Conference on Air Law, held at Montreal May 10–28, 1999, which resulted in the final draft of the Montreal Convention. (Cunningham Decl., Ex. G.) It is evident, however, that there are hundreds

of pages of this history that have not been presented to the Court. In reviewing the little that has been presented, the Court finds nothing dispositive. It is true that the question of whether to adopt a "fifth jurisdiction" was heavily debated. (Cunningham Decl., Exh. G, at 98; Exh. I, at 19.) But that debate does not seem to have centered on the difference between "domicile" and "residence." Rather, there was opposition to the idea of basing jurisdiction solely on a passenger's nationality. (Cunningham Decl., Exh. G, at 99, Exh. I, at 19.) Led by France, this opposition stemmed from the reluctance of developing countries whose carriers conducted no operations to or in the United States to agree that such a carrier should be subjected to jurisdiction in the United States any time a U.S. citizen was injured while traveling on one of the carrier's planes. Charles Krause & Kent Krause, 1 *Aviation Tort & Reg. Law* §§ 11:14, 11:17 (2008); Cunningham Decl., Exh. I, at 19–20.

Thus, the final compromise reached to include a fifth jurisdiction specifically addressed this concern, extending jurisdiction only over those carriers who "operate services" within a jurisdiction, Montreal Convention, Art. 33(2), and noting that the nationality of the injured party is not alone sufficient to establish jurisdiction. Montreal Convention, Art. 33(3)(b). In announcing the compromise, the United States noted that the draft convention was an important step forward, but required the United States to accept "revisions to the proposed fifth jurisdiction such that not all citizens will be protected. Instead, only those meeting the narrower requirements of having their 'principal and permanent residence' in the State will be covered." (Cunningham Decl., Exh. H, at 101.) This statement is equally true whether "principal and permanent residence" is read as "residence," "domicile,"

or something in between. Even expanding the definition to include everyone domiciled in the United States includes less than all United States citizens, some of whom are unquestionably domiciled outside the United States. Those U.S. nationals would thus be ineligible to seek relief in United States courts under the fifth jurisdiction under even the broadest interpretation of "principal and permanent residence."

With its reply, Defendant submitted an additional excerpt from the ICAO minutes. This material suggests that the United States may originally have sought to use the word "domicile" in the language of the fifth jurisdiction provision, which was then changed to "principal and permanent residence" during the negotiating process. However, the change appears to have been motivated, at least in part, by confusion engendered by the multi-lingual nature of the negotiations. The French word "domicile," despite its orthographic similarity to the American term "domicile," is not a direct translation of that term. Thus, "the use of those terms in the identical location had been producing a non-uniform result" in the French and English language versions of the Convention.[5] (Cunningham Decl., Exh. I, at 19.) Given this confusion, it is not surprising that the language was changed. But the fact that the language was changed does not necessarily indicate that the new language in the English version was intended to have a substantially different meaning. The new excerpt from the ICAO minutes makes clear that the main concern of the French delegation was to avoid a fifth jurisdiction "based on the plaintiff's nationality" (Cunningham Decl., Exh. I, at 19), which concern was unques-

tionably addressed. Beyond demonstrating that the line was drawn at something less than all citizens of a country, however, the drafting and negotiating history provided does not supply any guidance on exactly where the line was drawn.

▮ Therefore, the Court is satisfied that relying on Black's Law Dictionary for assistance in interpreting these treaty terms does not result in any conflict with the intentions of the negotiating parties. Accordingly, the Court finds that the term "principal and permanent residence," defined in the Montreal Convention as "fixed and permanent abode," does incorporate an element of intent. As Defendant's motion was based on the argument that intent is irrelevant, the motion must be denied. Further, while intent is a slippery concept, and difficult to prove either way, the facts presented here suggest that, more likely than not, Plaintiff did intend to return to the United States while she was living in Germany. Thus, Plaintiff may properly invoke the "fifth jurisdiction" of the Montreal Convention to bring suit in this Court. The Court notes that this finding is not based solely on Plaintiff's nationality, but rather a factual finding that Plaintiff's "principal and permanent residence" remained California during the time Plaintiff was living in Germany. The other concerns of the treaty negotiators are not implicated here—Defendant has not argued (undoubtedly with good reason) that it lacks sufficient contacts with the United States to meet the other requirements of the fifth jurisdiction. Further, this result is consistent with the Montreal Convention's status as "a treaty that favors passengers rather than airlines." *Ehrlich,*

---

**5.** Unlike some earlier treaties, the Montreal Convention is equally official in several languages, including both English and French. Montreal Convention, Witness Clause following Art. 57 ("DONE at Montreal on the 28th

day of May of the year one thousand nine hundred and ninety-nine in the English, Arabic, Chinese, French, Russian and Spanish languages, all texts being equally authentic.")

360 F.3d at 371 n. 4; *Baah,* 473 F.Supp.2d at 595.

## CONCLUSION

Accordingly, for the reasons set forth herein, Defendant's Motion to Dismiss is hereby DENIED.

**IT IS SO ORDERED.**