Sarah FADHLIAH; Aljoharah Alshaikh; Mansour Alshaikh; Alanoud Alshaikh; Sultan Alshaikh; Abdullah Alshaikh, Plaintiffs,

v.

SOCIÉTÉ AIR FRANCE dba Air France; Rudolph Van Der Schraaf; Does 1–50, Defendants.

Case No. 2:13–cv–06142–ODW (AJWx).

United States District Court, C.D. California.

Oct. 1, 2013.

Order Denying Reconsideration
Nov. 25, 2013.

Christopher J. Kondon, Saman M. Rejali, K and L Gates LLP, Los Angeles, CA, for Plaintiffs.

Shelley G. Hurwitz, Holland and Knight LLP, Los Angeles, CA, Christopher G. Kelly, Sarah Gogal Passeri, Holland and Knight LLP, New York, NY, for Defendants.

### ORDER DISCHARGING ORDER TO SHOW CAUSE RE. LACK OF SUB-JECT–MATTER JURISDICTION [6] AND GRANTING DEFEN-DANT'S MOTION TO DISMISS [7]

OTIS D. WRIGHT, II, District Judge.

### I. INTRODUCTION

On August 27, 2013, the Court ordered Defendant Société Air France to show cause why this case should not be dismissed for lack of subject-matter jurisdiction. (ECF No. 6.) The Court questioned whether it had federal-question jurisdiction over this case under 28 U.S.C. § 1331. Air France contends that Plaintiffs' purely state-law claims arise under the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106–45, 2242 U.N.T.S. 309 [hereinafter Montreal Convention]. (Not. of Removal ¶ 2.) On August 28, 2013, Air France moved to dismiss this case, asserting that no court in the United States is a proper jurisdiction to hear this case under the Montreal Convention's venue provisions. After reviewing Air France's response and the relevant case law, the Court determines that it has federal-question jurisdiction under the complete-preemption doctrine and **DIS-CHARGES** the Order to Show Cause. The Court also finds that no court in the United States may properly hear Plaintiffs' case and consequently **GRANTS** Air France's Motion to Dismiss.[1]

### II. FACTUAL BACKGROUND

Plaintiffs Sarah Fadhliah, Aljoharah Alshaikh, and Mansour Alshaikh are Saudi Arabian citizens. (Compl. ¶ 2.) Plaintiffs Alanoud, Sultan, and Abdullah Alshaikh are Fadhliah's minor children. (*Id.* ¶ 5.) Air France is a corporation organized under the laws of France. (Perez Decl. ¶ 16.) The airline has its principal place of business and headquarters in Tremblay–en–France, France. (*Id.*)

Fadhliah, Aljoharah, Alanoud, Sultan, and Abdullah's tickets provided for transportation originating and terminating in

---

**1.** After carefully considering the papers filed with respect to the Order to Show Cause and Air France's Motion to Dismiss, the Court deems the matters appropriate for decision without oral argument. Fed.R.Civ.P. 78; L.R. 7–15.

Riyadh, Saudi Arabia, with agreed stops in Paris, France, and Los Angeles, California. (*Id.* ¶¶ 9, 10, 12, 13, 14.) Mansour's ticket provided for a flight from Los Angeles to Riyadh with an agreed stop in Paris. (*Id.* ¶ 11.) Plaintiffs purchased their tickets through "Arabian Compan. For Traveller Svcs Ltd.," a travel agency located in Riyadh. (*Id.* ¶¶ 9–14.)

On June 11, 2011, Plaintiffs boarded Air France flight number AF073 at Los Angeles International Airport for travel to Paris, France. (*Id.* ¶ 11.) Plaintiffs' ultimate destination was Riyadh, Saudi Arabia. (*Id.*) Upon boarding, Fadhliah discovered that another passenger had allegedly occupied the seat assigned to Sultan.[2] (*Id.* ¶ 12.) Fadhliah asked a flight attendant to assist in resolving the issue. (*Id.*)

Chief Steward Rudolph van der Schraaf then approached Fadhliah and allegedly demanded that Fadhliah's family move to accommodate a French family that wanted to sit together. (*Id.* ¶ 13.) When Fadhliah asked van der Schraaf whether the seats assigned to her family on their boarding passes were correct, van der Schraaf allegedly grabbed Fadhliah by the arm to physically move her. (*Id.* ¶ 14.)

Van der Schraaf also allegedly demanded that Fadhliah move two-year-old Abdullah to another seat. (*Id.* ¶ 14.) When no one moved Abdullah, van der Schraaf allegedly unbuckled the boy and attempted to pick him up. (*Id.*)

During the affray, the aircraft's captain, currently styled as Doe No. 1, allegedly shouted at several of the family members to "shut up and sit down." (*Id.* ¶ 16.) Aljoharah then got up from her seat, and the captain shouted, "You, go back to your seat." (*Id.* ¶ 17.) Van der Schraaf then

allegedly pulled Aljoharah by the arm back to her seat. (*Id.* ¶ 18.)

Security personnel allegedly boarded the plane and forced the family to disembark. (*Id.* ¶ 19.) The captain allegedly followed the family through the jetway into the terminal, clapping at them to hurry along. (*Id.* ¶ 19.)

On June 10, 2013, Plaintiffs filed suit against Air France and van der Schraaf in Los Angeles County Superior Court, alleging state common-law claims for assault, battery, negligent hiring and supervision, and intentional infliction of emotional distress. (Not. of Removal Ex. A.) On August 21, 2013, Air France removed the case to this Court ostensibly under 28 U.S.C. § 1331, arguing that the Montreal Convention completely preempted Plaintiffs' claims. (*Id.* ¶ 2.) On August 27, 2013, the Court issued an Order to Show Cause re. Lack of Subject–Matter Jurisdiction. (ECF No. 6.) The Court questioned whether the Convention operated as simply an affirmative defense or whether the complete-preemption doctrine applies. The next day, Air France moved to dismiss the case, asserting that venue was not proper in the United States under Article 33 of the Convention. (ECF No. 7.) The Order to Show Cause and Air France's Motion are now before the Court for resolution.

## III. LEGAL STANDARD

██ Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *e.g., Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). A defendant may remove a suit

---

**2.** The Court respectfully refers to Plaintiffs by their first name when necessary to avoid con-   fusion.

filed in state court only if the federal court would have had original jurisdiction over the case. 28 U.S.C. § 1441(a). But courts strictly construe the removal statute against removal jurisdiction, and federal jurisdiction "must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). The party seeking removal bears the burden of establishing federal jurisdiction. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir.2006) (citing *Gaus*, 980 F.2d at 566). A party may bring a remand motion whenever it appears a matter is not properly before a federal court. 28 U.S.C. § 1447(c).

■ Generally, the well-pleaded-complaint rule governs whether a case is removable. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Under this rule, "it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

A narrow exception to the well-pleaded-complaint rule exists: the complete-preemption doctrine. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003); *Holman v. Laulo–Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993). This doctrine only applies in a narrow class of cases in which the preemptive force of federal law is so "extraordinary" that federal law transmutes state common-law claims into federal ones. *Id.; see also Jensen v. Virgin Atl.*, No. 12–CV–06227 YGR, 2013 WL 1207962, at *3

(N.D.Cal. Mar. 25, 2013). The United States Supreme Court expounded the test for complete preemption: "Does the [federal provision] provide the exclusive cause of action for ... claims against [defendants]? If so, then the cause of action necessarily arises under federal law and the case is removable. If not, then the complaint does not arise under federal law and is not removable." *Beneficial Nat'l Bank*, 539 U.S. at 9, 123 S.Ct. 2058.

## IV. DISCUSSION

### A. Claims against Air France

■ Air France argues that the Montreal Convention completely preempts all state-law claims in the context of international carriage as applied to this case. Plaintiffs disagree, contending that the Convention serves only, if at all, as an affirmative defense. They request that the Court remand the case. The Court agrees with Air France and finds that the complete-preemption doctrine applies.

#### 1. Complete preemption

Montreal Convention Article 29 provides that in "the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention." Montreal Convention, art. 29. Air France contends that the practical construction of this article is that it provides the sole basis for liability against a carrier and thus complete preemption. Plaintiffs disagree, arguing that the Convention only operates as an affirmative defense.

■ A court has the responsibility to interpret a treaty by giving "the specific words of the treaty a meaning consistent with the shared expectations of the con-

tracting parties." *Air France v. Saks*, 470 U.S. 392, 399, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985). The Supreme Court also noted that because "a treaty ratified by the United States is an agreement among sovereign powers, [the Court has] also considered as aids to its interpretation the negotiation and drafting history of the treaty as well as the postratification understanding of signatory nations." *Medellin v. Texas*, 552 U.S. 491, 507, 128 S.Ct. 1346, 170 L.Ed.2d 190 (2008).

Several considerations compel this Court to conclude that the preemptive force of the Montreal Convention is so strong that it transmutes Plaintiffs' facially state-law claims into federal ones under the complete-preemption doctrine. First, this Court does not write on a blank slate. The Supreme Court previously considered the preemptive effect of the Warsaw Convention's exclusivity provision, albeit not in the context of the jurisdictional doctrine of complete preemption, in *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999). Article 24 of the Warsaw Convention—the predecessor to Montreal Convention Article 29—provides that in cases dealing with, among others, injury to passengers, "any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention." *Id.* at 163, 119 S.Ct. 662.

The Supreme Court faced two divergent interpretations advanced by the parties. On one hand, one could interpret Warsaw Convention Article 24 so as to allow state-law claims that did not specifically fall under strict liability for personal injuries. *Id.* at 168, 119 S.Ct. 662. On the other hand, one could interpret Article 24 as precluding all other bases for liability other than those that satisfied the Convention's personal-injury provisions. *Id.* The Supreme Court, consistent with the Executive Branch's interpretation, adopted the latter reading. *Id.* at 169, 119 S.Ct. 662. The Court reasoned that, given the Convention's "comprehensive scheme of liability rules and textual emphasis on uniformity," one "would be hard put to conclude that the delegates at Warsaw meant to subject air carriers to the distinct, nonuniform liability rules of the individual signatory nations." *Id.* at 171, 119 S.Ct. 662. The Court also did not want to encourage "artful pleading" by plaintiffs to circumvent to the Convention's liability framework. *Id.*

Warsaw Convention Article 24's language is quite similar to that of Montreal Convention Article 29. Both treaties share the same "any action for damages, however founded" phrasing. The Montreal Convention's drafters added the additional wording of "whether under this Convention or in contract or in tort or otherwise." Montreal Convention, art. 33. Several federal districts courts have reviewed this additional phrasing and concluded that the Montreal Convention does not effect complete preemption. *Jensen*, 2013 WL 1207962, at *7; *Nankin v. Cont'l Airlines, Inc.*, No. CV 09–07851–MMM(RZx), 2010 WL 342632, at *6 (C.D.Cal. Jan. 29, 2010); *Serrano v. Am. Airlines, Inc.*, CV08–2256 AHM (FFMX), 2008 WL 2117239, at *3 (C.D.Cal. May 15, 2008).

But the "whether under this Convention or in contract or in tort or otherwise" language did not appear for the first time in the Montreal Convention. Rather, the phrase originated in Montreal Protocol No. 4, i.e., "Revised Article 24." In fact, Revised Article 24's language almost exactly mirrors Montreal Convention Article 29's phrasing: "In the carriage of cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be

brought subject to the conditions and limits of liability set out in this Convention...." Montreal Protocol No. 4 to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air art. VIII, Sept. 25, 1975, 19 2145 U.N.T.S. 36 (1975).

In *El Al Israel Airlines,* the Supreme Court noted that Revised Article 24 "merely clarifies, [but] does not alter, the Convention's rule of exclusivity." 525 U.S. at 175, 119 S.Ct. 662. There is no principled reason why the result should be any different under Montreal Convention Article 29. *See Schoeffler–Miller v. Nw. Airlines, Inc.,* No. 08–CV–4012, 2008 WL 4936737, at *3 (C.D.Ill. Nov. 17, 2008) (finding complete preemption under the Montreal Convention).

The striking divide among federal courts over the Montreal Convention's preemptive effect evidences Article 29's abstruseness. In this situation, a court may properly resort to the *travaux préparatoires,* or the treaty's drafting history, to resolve the ambiguity. *Zicherman v. Korean Air Lines Co., Ltd.,* 516 U.S. 217, 226, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996).

In discussing the new Convention's exclusivity, the Montreal Conference's Chairman stated,

> The purpose behind Article 2[9] was to ensure that, in circumstances in which the Convention applied, it was not possible to circumvent its provisions by bringing an action for damages in the carriage of passengers, baggage and cargo in contract or in tort or otherwise. Once the Convention applied, its conditions and limits of liability were applicable.

Int'l Civil Aviation Org., International Conference on Air Law, Vol. 1, 1999 Doc. 9775–DC/2, at 235 (1999). This statement elucidates that the additional "in contract or in tort or otherwise" language simply bolsters—not dilutes—the Convention's preemptive effect once one establishes that an agreement relates to "international carriage" under Article 1.

Plaintiffs, relying on the district court's reasoning in *Jensen,* argue that there are certain actions to which the Montreal Convention does not apply and therefore the Convention cannot completely preempt state common-law claims. *See Jensen,* 2013 WL 1207962, at *6–7 (citing the Ninth Circuit's holding in *Lathigra v. British Airways PLC,* 41 F.3d 535 (9th Cir. 1994)). But the fact that some causes of action might fall outside the Convention's scope does not prove that the Convention is not supreme within the context of "international carriage." Of course every treaty is going to have its limits, so some actions necessarily will not come within the treaty's grasp.

*Lathigra* is a perfect example. The Ninth Circuit addressed whether total nonperformance of a contract fell within the Warsaw Convention's scope. 41 F.3d at 536. Interpreting the term "air carrier," the court concluded that the Convention only began to apply when a passenger presented herself to the airline for travel. *Id.* at 539. But the court did not find that there was an exception to the Convention itself.

The Supreme Court gives great weight to the "reasonable views" of the Executive Branch in interpreting a treaty. *El Al Israel Airlines,* 525 U.S. at 168–69, 119 S.Ct. 662. In presenting the Montreal Convention to the Senate for its advice and consent, the State Department confirmed the treaty's preemptive effect. Deputy Assistant Secretary of State for Transportation Affairs John R. Byerly stated that the Convention establishes "in clear language, its exclusivity in the area of claims for damages arising in the international

transportation of passengers, baggage and cargo." S. Exec. Rep. No. 108–8, at 19 (2003); *see also id.* at 5.

This Court's complete-preemption finding also comports with British courts' posttratification understanding of Article 29. In *Hook v. British Airways Plc,* the Queen's Bench Division of the High Court of Justice considered whether Montreal Convention Article 29 preempted a civildamages action authorized under Regulation 9 of the Civil Aviation Regulations, which related to disabled persons' access to air travel. [2011] EWHC (QB) 379, [¶¶ 1, 24]. The court found that "there are no exceptions to the exclusivity of the Convention." Regulation 9 did not properly "create a private law cause of action sounding in damages" that fell outside the Convention. In coming to this decision, the High Court of Justice referenced the House of Lord's decision in *Sidhu v. British Airways Plc,* [1997] 1 All E.R. 193–a decision that the United States Supreme Court found persuasive in considering the Warsaw Convention's preemptive effect. *El Al Israel Airlines,* 525 U.S. at 173–74, 119 S.Ct. 662. On appeal, the Court of Appeal of England and Wales affirmed, holding that Article 29 "both provided and limited" the plaintiff's rights and remedies. *Hook v. British Airways Plc,* [2012] EWCA (Civ) 66, [¶ 54].

### 2. Convention's applicability to Plaintiffs' claims against Air France

Article 1 of the Montreal Convention provides that the treaty "applies to all international carriage of persons, baggage or cargo performed by aircraft for reward" or gratuitously. Montreal Convention, art. 1. The treaty defines "international carriage" as any carriage that, "according to the agreement between the parties, the place of departure and the place of destination ... are situated either within the territories of two States Parties, or within the territory of a single State Party if there is an agreed stopping place within the territory of another State." *Id.*

Fadhliah, Aljoharah, Alanoud, Sultan, and Abdullah's tickets all provided for roundtrip service beginning and ending in Riyadh, Saudi Arabia, with agreed stops in Paris and Los Angeles. Saudi Arabia, France, and the United States are all parties to the Montreal Convention. Convention for the Unification of Certain Rules for International Carriage by Air Done at Montreal on 28 May 1999, Int'l Civ. Aviation Org., http://www.icao.int/secretariat/legal/List% 20of% 20Parties/Mtl99_EN.pdf (last visited Sept. 24, 2013). Their tickets thus fall within the latter provision of Article 1(1), that is, where the origin and destination are within the territory of a stateparty with an agreed stopping place in the territory of another state.

Mansour's ticket provided for one-way carriage from Los Angeles to Riyadh. Since both the United States and Saudi Arabia are state-parties, Mansour's ticket also constituted "international carriage" for purposes of the Convention.

The Court finds that the Montreal Convention applies to Plaintiffs' claims against Air France. To answer the Supreme Court's complete-preemption question, the Court further finds that the Montreal Convention does provide the exclusive cause of action against Air France and that the Court thus has federal-question jurisdiction under the complete-preemption doctrine. *Beneficial Nat'l Bank,* 539 U.S. at 9, 123 S.Ct. 2058.

### 3. Claims against Rudolph van der Schraaf

Plaintiffs have also named the flight's chief steward, Rudolph van der Schraaf, as a defendant. While the Court has determined that the Montreal Convention ap-

plies to Plaintiffs' claims against Air France, the Convention's applicability to van der Schraaf, an individual, is a different issue. Neither party briefed the issue. But since the Court has an inherent duty to determine whether it has jurisdiction, it must consider the issue. *See United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 967 (9th Cir.2004).

Article 30 provides,

> If an action is brought against a servant or agent of the carrier arising out of damage to which the Convention relates, such servant or agent, if they prove that they acted within the scope of their employment, shall be entitled to avail themselves of the conditions and limits of liability which the carrier itself is entitled to invoke under this Convention.

Montreal Convention, art. 30(1); *see also* art. 43. Article 30 contains a proviso, which states that subsection (1) does not apply if the servant acted "with intent to cause damage or recklessly and with knowledge that damage would probably result." *Id.* art. 33(3).

■ Plaintiffs allege that van der Schraaf is an employee of Air France, so Article 30 appears to cloak him with the Montreal Convention's conditions and limits. To the extent that Plaintiffs assault, battery, and intentional-infliction-of-emotional-distress claims invoke Article 30's proviso, the Court has supplemental jurisdiction over those claims under 28 U.S.C. § 1367(a).

The Court thus finds that it has jurisdiction over Plaintiffs' claims against van der Schraaf.

## B. 12(b)(1) motion: venue under the Montreal Convention

On August 28, 2013, Air France moved to dismiss Plaintiffs' case, arguing that under Montreal Convention Article 33, no court in the United States is a proper venue to hear this case.

Article 33 provides that an "action for damages may be brought" in any one of five locations at the plaintiff's direction: (1) where the carrier is domiciled; (2) where the carrier has its principal place of business; (3) "the place of business through which the contract has been made"; (4) the place of destination; or (5) where "the passenger has his principal and permanent residence." Montreal Convention, art. 33(1), (2). The Convention defines a passenger's "principal and permanent residence" as "the one fixed and permanent abode of the passenger at the time of the accident." *Id.* art. 33(3)(b).

Air France contends that each one of these possible venues lies outside the United States. Air France therefore requests that the Court dismiss Plaintiffs' Complaint. Plaintiffs timely opposed Air France's Motion. But Plaintiffs did not rebut any of the airline's factual assertions.

■ A carrier's domicile is generally regarded as its place of incorporation for the purposes of the Convention. *Aikpitanhi v. Iberia Airlines of Spain*, 553 F.Supp.2d 872, 878 (E.D.Mich.2008) (finding that, because Iberia Airlines is organized and exists under the laws of Spain, the airline's domicile is in Spain); *In re Air Disaster Near Cove Neck, N.Y., on Jan. 25, 1990*, 774 F.Supp. 718, 725 (E.D.N.Y.1991) (holding that an airline was domiciled where "incorporated and headquartered"); George N. Tompkins, Jr., *Liability Rules Applicable to International Air Transportation as Developed by the Courts in the United States* 255 (2010) ("The carrier's domicile is regarded as its place of incorporation.").

A carrier can only have one principal place of business, and that location is gen-

erally where the airline is incorporated or headquartered. *Aikpitanhi*, 553 F.Supp.2d at 876; *see also Swaminathan v. Swiss Air Transp. Co., Ltd.*, 962 F.2d 387, 390 (5th Cir.1992); *Wyler v. Korean Air Lines Co., Ltd.*, 928 F.2d 1167, 1175 (D.C.Cir.1991); Tompkins, Jr., *supra*, at 255.

Air France is incorporated under the laws of France and has its principal place of business in Tremblay–en–France, France.

The "place of business through which the contract has been made" can be the office of a travel agent that is authorized under International Air Transport Association rules to issue passenger tickets on behalf of the carrier. Tompkins, Jr., *supra*, at 256. The IATA code on each of Plaintiffs' tickets confirms that Plaintiffs purchased, and the tickets were issued, in Riyadh, Saudi Arabia.

For purposes of a one-way ticket, the "place of destination" is the return city. *Klos v. Lotnicze*, 133 F.3d 164, 167 (2d Cir.1997); Tompkins, Jr., *supra*, at 258 (place of origin). Fadhliah, Aljoharah, Alanoud, and Sultan, Abdullah all purchased roundtrip tickets originating and terminating in Riyadh, Saudi Arabia. Mansour's ticket provided for service from Los Angeles to Riyadh. All Plaintiffs' destinations were therefore Saudi Arabia—not the United States.

Fadhliah, Aljoharah, and Mansour admit in their Complaint that they are Saudi Arabian citizens. Alanoud, Sultan, and Abdullah—ages 11, 6, and 2, respectively— are Fadhliah's minor children, and there is no indication that they live anywhere but with their mother, Fadhliah, in Saudi Arabia. While the Convention advises that the "nationality of the passenger shall not be the determining factor" in assessing a passenger's principal and permanent residence, Plaintiffs did not rebut Air France's

factual assertions regarding their residency. The fact that Plaintiffs' travel terminated in Riyadh also bespeaks Plaintiffs' Saudi Arabian residency.

The Court therefore finds that the United States is not a proper venue for Plaintiffs' Complaint under Article 33. It appears that only courts in France or Saudi Arabia may validly hear this dispute. The Court consequently **GRANTS** Air France's Motion to Dismiss.

## V. CONCLUSION

In sum, the Court finds that Air France properly removed this case under the complete-preemption doctrine and accordingly **DISCHARGES** the Order to Show Cause. (ECF No. 6.) The Court also finds that no court in the United States may properly hear Plaintiffs' case and therefore **GRANTS** Air France's Motion to Dismiss. (ECF No. 7.) Any amendment would be futile, so the Court will not permit Plaintiffs to refile in this Court. The Clerk of Court shall close this case.

**IT IS SO ORDERED.**

**ORDER DENYING MOTION FOR RECONSIDERATION [16] AND DENYING MOTION PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 60(b), 59(e), AND 52(b) [17]**

### I. INTRODUCTION

This case initially presented an unsettled area of law: whether the Montreal Convention completely preempted Plaintiffs' state-law tort claims against Defendant Société Air France and some of its crew members arising from an incident that occurred on one of Air France's flights. *See* Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106–45, 2242 U.N.T.S. 309 [hereinafter Montreal

Convention]. After considering all relevant sources, the Court determined that it did—and therefore that Air France properly removed the case to this Court under federal-question jurisdiction. The Court also found that under Article 33 of the treaty, the United States was not a proper venue for Plaintiffs' action and consequently dismissed Plaintiffs' Complaint without prejudice but without leave to amend.

Plaintiffs then filed two kitchen-sink Motions and a Notice of Appeal, arguing that the Court "failed to consider the material facts before it." They suddenly adduced new, yet preexisting, evidence regarding their principal and permanent residence. After considering these Motions, the Court finds that Plaintiffs' evidence is untimely and still fails to establish that their principal and permanent residence is anywhere but in Saudi Arabia. The Court therefore **DENIES** Plaintiffs' Motions.[1]

## II. FACTUAL BACKGROUND

In the interest of judicial economy, the Court incorporates the factual background contained in the October 1, 2013 Order Granting Defendant's Motion to Dismiss. (ECF No. 15.) In that Order, the Court found that the Montreal Convention completely preempted Plaintiffs' state-law tort claims, thereby establishing federal question jurisdiction under the treaty and making Air France's removal proper under 28 U.S.C. § 1441.

Air France then moved to dismiss Plaintiffs' claims, arguing that under Montreal Convention Article 33, the United States was not a proper venue to hear the dispute. Air France submitted evidence establishing where Plaintiffs purchased their plane tickets, where Air France is incorporated and has its principal place of business, and the place of Plaintiffs' destination. Air France also asserted that Plaintiffs' "principal and permanent residence" is Saudi Arabia based on admissions in Plaintiffs' Complaint.

Opposing the Motion, Plaintiffs did not rebut Air France's factual assertions. Rather, Plaintiffs stated, "Notwithstanding the inaccuracy of Air France's assertions, Plaintiffs need not reach the facts in this response, as Air France is not entitled to dismissal as a matter of law." (ECF No. 8, 5 n. 1.)

Based on the evidence before it, the Court found that the United States is not a permissible venue for Plaintiffs' case under Article 33; indeed, no court in the United States may hear Plaintiffs' case. The Court consequently dismissed Plaintiffs' case without prejudice but without leave to amend.

On October 22, 2013, Plaintiffs filed a Motion for Reconsideration. (ECF No. 16.) One week later, Plaintiffs filed another Motion—this time under Federal Rules of Civil Procedure 60(b), 59(e), and 52(b). Perfecting their trifecta, Plaintiffs filed a Notice of Appeal on October 31, 2013. (ECF No. 18.) Air France timely opposed both Motions. Given the identity of Plaintiffs' arguments, the Court resolves both Motions here together.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) permits a court to relieve a party of an order for, among others, "any other reason that justifies relief." Fed.R.Civ.P. 60(b)(6). Under Ninth Circuit case law, a party may only seek relief under this catchall provision when the party demonstrates "extraordinary circumstances" warranting the court's favorable exercise of

---

**1.** After carefully considering the papers filed with respect to these Motion, the Court deems the matters appropriate for decision without oral argument. Fed.R.Civ.P. 78; L.R. 7–15.

discretion. *Cmty. Dental Servs. v. Tani,* 282 F.3d 1164, 1168 (9th Cir.2002). To satisfy its burden under this lofty standard, a party must prove both (1) an injury and (2) circumstances beyond its control. *Id.*

Under Rule 59(e), a party may move to alter or amend a judgment. Rule 52(b) allows a court to amend its findings and alter judgment accordingly on a party's motion.

The Central District of California Local Rules further elucidate the proper bases for which a party may seek reconsideration:

> (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.
>
> [L.R. 7–18.]

Additionally, "[n]o motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion." *Id.*

## IV. DISCUSSION

In both of their Motions, Plaintiffs contend that there is no factual support for the Court's finding that Plaintiffs are principal and permanent residents of Saudi Arabia, no factual support for the Court's finding that amendment would be futile, and remand—not dismissal—was the proper remedy in this case. Air France disagrees, arguing that the Court properly determined that no court in the United States could hear the Plaintiffs' case under the Montreal Convention. The Court finds that Plaintiffs have not identified any valid basis for reconsideration and therefore denies their Motions.

## A. Plaintiffs' "principal and permanent residence"

Plaintiffs' chiefly argue that "this Court failed to consider material facts already before it." (ECF No. 16, at 7.) They contend that Air France erroneously established Plaintiffs' "principal and permanent" residence for Article 33 purposes based on the declaration of one of Air France's own employees, even though that employee would have no personal knowledge of Plaintiffs' residency. Plaintiffs also assert that they contested Air France's factual assertions. They argued that four out of five of the Plaintiffs had arrived in California in November 2010 and remained there until June 2011, and Mansour Alshaikh's travel originated in the United States, not Saudi Arabia. Plaintiffs also "reserved their rights to provide additional facts as needed if the Court concluded that it did need to make factual findings with regard to residency." (*Id.* at 3.) Finally, Plaintiffs submitted three new declarations demonstrating that Plaintiffs have maintained their "primary residence" in California since 2007 and intend to remain in California "for the foreseeable future."

In response, Air France asserts that Plaintiffs have not established any appropriate basis for reconsideration under Local Rule 7–18. Air France avers that it is impermissible to raise new facts via a reconsideration motion that could have been raised previously. Defendant correctly notes that it "defies logic that plaintiffs did not know where they resided at the time that they filed the opposition, but now suddenly remember." (ECF No. 19, at 2.) And even if the Court considers Plaintiffs' new declarations, Air France argues that

Plaintiffs have still failed to establish that their principal and permanent residence is in the United States. The Court agrees.

■ Plaintiffs' declarations have surfaced for the first time now after the Court already granted Air France's dismissal Motion and closed the case. The law is clear: "A motion for reconsideration may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir.2009) (internal quotation marks omitted). Plaintiffs astonishingly contend that they were not given a chance to respond to Air France's factual assertions and establish their principal and permanent residence. This argument is peculiar considering that Plaintiffs filed a 10–page opposition to Air France's Motion. Plaintiffs also accepted the Court's invitation to brief the issue of whether the Court has subject-matter jurisdiction over this case. In all of their papers, Plaintiffs submitted nary a single declaration or other evidence to demonstrate their principal and permanent residence. Their declarations now come too late.

■ Even if the Court were to consider Plaintiffs' declarations, the Court is still not convinced that Plaintiffs have established that their principal and permanent residence—or "fixed and permanent abode"—is in the United States instead of Saudi Arabia. First, Plaintiffs admitted in their Complaint that they are Saudi citizens. These statements constituted judicial admissions. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). The Court took Plaintiffs at their word and found that they were Saudi citizens.

Second, Plaintiffs misinterpret Article 33. That provision allows a plaintiff to bring suit in one of five enumerated fora, one of which is in the jurisdiction where the plaintiff has her "principal and permanent residence." Montreal Convention, art. 33. Despite that fact that the Montreal Convention is a multilateral agreement among 104 countries, Plaintiffs construe the terms of the Convention based solely on American law. The Montreal Convention drafters made clear in their discussions that "principal and permanent residence" is akin to the American concept of "domicile." George N. Tompkins, Jr., *Liability Rules Applicable to International Air Transportation as Developed by the Courts in the United States* 66–67 (2010). They did not use the word domicile, because in civil-law countries a person can have more than one domicile—something the drafters did not want. *Id.*

■ One must interpret Article 33's principal-and-permanent-residence provision similar to U.S. law regarding domicile and citizenship. *See Hornsby v. Lufthansa German Airlines*, 593 F.Supp.2d 1132, 1139 (C.D.Cal.2009) (finding that the term "does incorporate an element of intent"). Plaintiffs admit that they are Saudi citizens, and their other evidence shows that they are only residing in California as that term is understood under domestic law. They indicate that they have lived in California since 2007 and stay in this state nine months out of the year. The fact that Mansour and Aljoharah have diplomatic driver's licenses demonstrates as Air France argues that they likely came to the United States for diplomatic purposes. Indeed, they admit that their father is a Saudi diplomat. Further, that Mansour, Aljoharah, and Fadhliah's children attend school in California does not indicate domicile; people frequently attend school away from home.

The Court finds that Plaintiffs' evidence is untimely, and—even if considered—does

not rebut Plaintiffs' own admissions that they are Saudi citizens. The Court therefore **DENIES** Plaintiffs' Motions on this ground.

## B. Futility of amendment

Plaintiffs' arguments regarding futility of amendment largely echo their previous arguments. They assert that "Plaintiffs were ... not afforded the opportunity to rebut Air France's assertions regarding their residency, despite the fact that these assertions were completely unsupported by evidence." (ECF No. 16, at 4.) As the Court noted above, Plaintiff had every chance to submit their evidence with their previous briefs but failed to do so. The Court was left with Plaintiffs' own admissions of their Saudi citizenship along with the inferences that Air France could muster.

Plaintiffs seem to equate "amendment" with a misplaced notion of their ostensibly, ever-shifting principal and permanent residence. One wonders how a plaintiff can amend a complaint to divest herself of admitted citizenship in one country and suddenly invest herself with citizenship in another. This evanescent pick-your-citizenship idea is hardly what the Montreal Convention drafters envisioned in inditing Article 33's "fixed and permanent abode" provision. *See* Tompkins, Jr., *supra*, at 66–67; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir.2001) (dismissal without leave to amend is proper if it clear that the complaint could not be saved by any amendment). Neither is this provision an "airline-friendly trap" crafted by Air France (Reply 6); rather, it is the Convention's blackletter law.

## C. Dismissal versus remand

Plaintiffs' last argument fairs no better. Plaintiffs again misconstrue the Montreal Convention and the Court's dismissal Order. They make much of the United States Supreme Court's decision in *International Primate Protection League v. Administrators of Tulane Educational Fund,* 500 U.S. 72, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991). In that case, the Court held that "the literal words of § 1447(c) ... give no discretion to dismiss rather than remand an action." *Id.* at 89, 111 S.Ct. 1700 (internal quotation marks omitted); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

But the problem with Plaintiffs' argument is that this Court found that it *did* have subject-matter jurisdiction. (*See* ECF No. 15, at 10 (finding that "the Court thus has federal-question jurisdiction").) Indeed, both parties extensively briefed the complete-preemption issue under the Montreal Convention—i.e., whether Air France properly removed this case to this Court. After considering those submissions and relevant law, the Court found "that the Montreal Convention does provide the exclusive cause of action against Air France and that the Court thus has federal-question jurisdiction under the complete-preemption doctrine." (ECF No. 15, at 10.)

Finding that it had jurisdiction, this Court had nothing to remand. Rather, it was only after the Court found that the United States was not a proper venue under Article 33 to hear this dispute that the Court dismissed the action. While "Plaintiffs seek to have this Court ... overturn its dismissal with prejudice of the substantive case," nothing of the sort occurred. The Court did not dismiss Plaintiffs' case with prejudice, i.e., on the merits. *In re Marino*, 181 F.3d 1142, 1144 (9th Cir.1999). The Court simply found that amendment of Plaintiffs' Complaint

would not change the words of Article 33's venue provisions, which preclude the United States as a proper place to hear Plaintiffs' dispute.

## D. Rules 60(b), 59(e), and 52(b)

Neither do Plaintiffs find much success under their second—though identical—Motion under Federal Rules of Civil Procedure 60(b), 59(e), and 52(b). For the same reasons as stated above, the Court finds that Plaintiffs have not established any valid ground for relief from the Court's order under Rule 60(b). And there was never any "judgment" or trial in this case, so Rules 59(e) and 52(b) are simply inapposite. *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 467 (9th Cir. 1989) (holding that a Rule 56(e) motion was not proper, because the plaintiffs were appealing an order that did not end the litigation on the merits and leave nothing for the court to do but execute the judgment); Fed.R.Civ.P. 52(b) ("the court may . . . amend the *judgment* accordingly" (emphasis added)).

## V. CONCLUSION

Finding no valid basis for reconsidering its prior dismissal Order, the Court **DENIES** Plaintiffs' Motions. (ECF Nos. 16, 17.)

**IT IS SO ORDERED.**